256 P.2d 716

HOME BUILDERS & SUPPLIERS et al. v. TIMBERMAN.

No. 5648.

Supreme Court of Arizona.

April 30, 1953.

In landowner's action for restitution of interests in land conveyed as part of per-

338

Scruggs, Butterfield & Rucker, of Tucson, for appellants.

Silver & Silver, of Tucson, for appellee.

UDALL, Justice.

This is an appeal from a judgment of $4400 entered jointly and severally against the appellants Home Builders and Suppliers, a corporation, and J. W. Anderson and Magel Anderson, his wife, and in favor of appellee Agnes Clark Timberman. A supersedeas bond was posted by appellants.

The case was tried to the court sitting without a jury, following a pre-trial conference. The court made findings of fact and conclusions of law in addition to filing a memorandum opinion, hence we are fully advised as to the basis for its judgment.

The facts out of which suit arose are as follows. In June, 1948, appellee owned Lots 9, 10, 11, 14, 15 and 16 in Block 7 of Plumer and Steward Addition No. 2, Pima County, Arizona. Appellant Home Builders and Suppliers, of which appellant J. W.

Anderson was president, was engaged—along with its retail business—in building houses, duplexes, etc., on contract and for speculation.

The inadequate instruments involved in this litigation were prepared by a layman, H. Cowan Drachman, realtor. He represented both parties in the negotiations resulting in the contract and later for a time when differences developed. The parties actually met for the first time at the trial. Much of the controversy and probably all litigation could have been avoided but for this attempt on the part of the broker to act as a lawyer for the parties in drawing these various instruments. When an unskilled person is employed or allowed to advise in such an important matter, trouble is likely to arise.

The negotiations leading to the execution of the contract in question are stated below.

Omitting everything that is not pertinent from the preliminary sale agreement form used, J. W. Anderson individually, on June 11, 1948, offered to construct a duplex on appellee's Lot 9 for a given price and to accept appellee's equity in the remaining five lots as the down payment. Other particulars are as follows:

"Received of J. W. Anderson Purchaser, * * * as part of the purchase price of the following described property:

"Lots 10, 11, 14, 15 and 16, Block 7, of Plumer and Steward Addition, Tucson, Arizona.

\* \* \*

"Price shall be Seventy-One Hundred and No/100 Dollars ($7,100.00). Terms shall be as follows: $7,100.00 cash on closing sale (which includes above deposit).

"Subject to:

"1. The Seller entering into a contract with the Buyer to construct a duplex on Lot 9 of Plumer and Steward addition for a price of $15,500.00, which shall include all utility connections (water, gas and electricity) and landscaping valued at not less than $300.00.

"2. That the Purchaser will furnish, or cause to be furnished, a FHA Loan or get another loan of not less than $9,600.00 with interest at not more than five and one-half percent (5½%) and with the monthly payments, including interest, not to exceed $96.00 per month.

"3. That the duplex will consist of not less than 1300 square feet and will be built according to approved plans and specifications, a copy of which will be made part of this agreement.

"4. That Purchaser will furnish a completion bond. \* \* \*"

The offer was not accepted as submitted but appellee made a counter offer, the salesman writing in longhand on the back of the instrument the following, viz:

"This agreement as above stated is acceptable with the following exceptions—that the undersigned will give and the seller of Duplex will take back a contract of Sale the amt. of which will be the difference between sale price of duplex and my equity in lots, being transferred, plus all incidental fees. Said contract will be for one year bearing int. at 6% per annum & payable approx. 1% per mo. on the unpaid balance.

Agnes Clark Timberman
Witnessed 12 June 1948
L. V. Roberson."

There is no evidence that the counter offer was ever accepted by appellant Anderson. The court, therefore, properly found as a matter of law that there was no contract as a result of these preliminary negotiations. After the offer and counter offer, and before the contract hereinafter set forth was executed, discussions relative to appellants' proposed undertaking to furnish an F.H.A. or other mortgage of $9600 resulted in a decision whereby appellee would transfer the title of Lot 9 to appellant Home Builders in order to facilitate obtaining the required financing, as appellant Home Builders could more easily qualify for an F.H.A. loan.

340

### Contract

On June 24 an agreement between appellant Home Builders and Suppliers, Inc., and appellee, designated "Building Contract", was entered into, the pertinent parts of which are as follows:

### "Building Contract

" * * * Article I. The Contractor, under the direction and to the satisfaction of H. Cowan Drachman, Realtor, acting for the purpose of this contract as Agent of the said Purchaser, shall and will provide all the materials and perform all the work mentioned in the specifications and shown on the drawings prepared by the said Contractor for the

"Duplex, to be erected on Lot 9, Block 7, of Plumer and Steward's Addition to the City of Tucson

"which drawings and specifications are identified by the signatures of the parties hereto. * * *

"Article IX. It is hereby mutually agreed between the parties hereto that the sum to be paid by the Purchaser to the Contractor for said work and materials shall be:

"1. $9,600.00 by executing and assuming the first mortgage, according to the terms of the original preliminary sale agreement, a copy of which is hereby attached and made a part hereof.

"2. $3,562.97 by executing a contract or second mortgage in favor of the Contractor, according to the terms of the original preliminary sale agreement referred to above.

"3. All of the balance to be represented by the transferring of the equity as it now exists in Lots 9, 10, 11, 14, 15 and 16 in Block 7 of Plumer and Steward's Addition No. 2, Pima County, Arizona, according to the terms of the copy of the preliminary sale agreement which is hereby attached. * *

### "Amendment

"This Contract is hereby amended as follows:

"Under Article I, this phrase 'Duplex to be erected on Lot 16 in Block 7 of Plumer and Steward's Addition No. 2 to the City of Tucson, Arizona' to be substituted for 'Duplex to be erected on Lot 9 in Block 7 of Plumer and Steward's Addition to the City of Tucson, Arizona'.

"Under Article IX, Item 2 is hereby amended to read as follows: $3562.97 by executing a contract or second mortgage in favor of the Contractor with payments running not less than $36.00 per month, including interest at six percent (6%), with additional provision that an Acceleration Clause will be inserted, making it mandatory that this contract or second mortgage be paid in full if the Purchaser, Agnes

Clark Timberman, sells the property or transfers it to another purchaser. Also, that the contract or second mortgage shall be paid in full in any case at the end of three years or extended at the option of the holder thereof.

"The above to replace all of Item 2 in Article IX, above."

Article I states that the drawings and specifications are identified by the signature of the parties. None were ever so identified. The evidence shows that a set of blueprints (admitted in evidence) was briefly exhibited to appellee. A document entitled "Description of Materials" required by the Federal Housing Authority and part of its files was offered and admitted as the specifications.

On June 28, 1948, appellee executed her deed to appellant Home Builders and Suppliers, Inc., for the six lots heretofore referred to.

Thereafter identical duplexes were built on each of the six lots. The duplex on Lot 16 was the last commenced and it was not finished until the early part of 1949. All of the duplexes were completed to the satisfaction of the F.H.A. However, the question of completion of the duplex on Lot 16 became an issue at the trial, the appellee claiming a failure to (1) landscape, (2) furnish coolers, (3) build the garage according to plan, or (4) paint in conformity with the contract.

The appellants by their attorneys wrote to appellee on March 2, after earlier oral communications through the realtor Drachman regarding the completion of the duplex and closing of the transaction, to the effect that: (1) the duplex was finished, (2) the papers necessary to complete the transaction were being held by the realtor, (3) a quitclaim deed to appellant Home Builders and Suppliers, Inc., was available for her to execute if it was not her intention to carry out the contract, and (4) if not so completed or terminated proceedings would be undertaken to clear the title. After receiving the letter appellee made several unsuccessful attempts to communicate directly with appellants or their attorneys. Appellee, in company with realtor Drachman, consulted an attorney. Thereafter this realtor made an effort to sell the duplex on Lot 16 on behalf of the appellee. Though the realtor had not found a buyer for her, in a letter dated July 28th appellee wrote to him that she was going to

". "* * * take up the property on either the original basis or on a cash settlement. I am prepared to put up $2000.00 cash if you can make such a settlement for me."

The contents of the letter were never disclosed to appellants since a few days prior to its receipt appellants had informed the realtor that they had forfeited the appellee's interest in said property. Thereafter realtor Drachman offered the duplex for sale as agent for appellants.

Appellants sold all the duplexes, including the one on Lot 16, without informing appellee or obtaining her consent. Nothing further transpired until appellee filed suit to recover judgment for her equity in the six lots.

The appellants' seventeen assignments of error attack the judgment on three broad grounds. For brevity we will summarize and treat them as appears best.

The court having found the building contract was not a contract for the sale of real estate and hence not subject to forfeiture, it is urged the judgment based thereon is error for such is contrary to law and the evidence.

 Though there was some conflict in the testimony there was substantial evidence before the court that the building contract was not a contract for the sale of real estate. Unless the contract is clear and unambiguous so that the court could not properly consider parol evidence of the parties' intent, we are bound by such finding.

Article IX of the Contract, as amended, twice incorporates by reference terms of the preliminary sale agreement. Section 1 thereof incorporates that part of the preliminary sale agreement that describes the proposed F.H.A. mortgage, while section 3 purports to show, through integration with the applicable terms of the preliminary sale agreement, what equity in the six designated lots is part of the "sum to be paid".

After reading section 3, supra, and the preliminary sale agreement together it is not clear what the parties' intention was regarding the sixth lot, hence parol testimony was admissible. Therefore, the trial court's finding that the transfer was for the purpose of obtaining suitable financing is controlling.

The contract not being one for the conveyance of real property there can be no statutory forfeiture of the interest of the purchaser under Section 71–126, A.C.A. 1939. The right to forfeit may also arise from the agreement of the parties as shown by the language of the contract. See, 12 Am.Jur., Contracts, § 435.

In the printed portions of the preliminary sale agreement form appears this clause, upon which appellants rely:

"* * * If owner's (appellee herein) acceptance is obtained within said period, then this instrument shall become a binding obligation on the purchaser's (appellants') part, and in the event of any default on the purchaser's part, all sums paid by purchaser shall be forfeited as liquidated damages, or this agreement may be enforced by specific performance or other appropriate remedy. * * *" (Parentheses supplied).

The provision is unilateral and only makes the interest of the purchaser (appellant Anderson) on the preliminary sale agreement subject to forfeiture as liq-

uidated damages at the option of the seller. This provision cannot be invoked against appellee in any event, for the incorporation of the preliminary sale agreement in the building contract was in each instance for a particular and specified purpose. Where a reference is so limited the incorporated writing becomes a part of the contract for such specified purpose only. 17 C.J.S., Contracts, § 299. We hold that the learned trial court correctly held that the appellants were not entitled to declare a forfeiture.

Appellants attack many of the court's findings and the judgment based thereon as being contrary to law and the evidence on the ground that appellee had totally breached, abandoned and failed to perform her obligations under the contract.

The court concluded on the evidence before it that (1) the contract was not performed by the parties, (2) the appellants had suffered no damage, and gave judgment for the appellee's equity in the six lots, which was stipulated on pre-trial conference to be $4,400, concluding that appellants had been unjustly enriched in that amount. The record does not make clear whether the failure of performance included the appellants but we shall assume for purposes of discussion that it does not.

The question is, then: may the appellee, in default, have restitution when the appellants, not in default, have suffered no damage?

The rule is stated in the Restatement of the Law, Contracts, section 357, as follows:

"Restitution in Favor of a Plaintiff Who Is Himself in Default.

"(1) Where the defendant fails or refuses to perform his contract and is justified therein by the plaintiff's own breach of duty or non-performance of a condition, but the plaintiff has rendered a part performance under the contract that is a net benefit to the defendant, the plaintiff can get judgment, * * * for the amount of such benefit in excess of the harm that he has caused to the defendant by his own breach, in no case exceeding a ratable proportion of the agreed compensation, if

"(a) the plaintiff's breach or non-performance is not wilful and deliberate; * * *

"(2) The plaintiff has no right to compensation for his part performance if it is merely a payment of earnest money, or if the contract provides that it may be retained and it is not so greatly in excess of the defendant's harm that the provision is rejected as imposing a penalty.

"(3) The measure of the defendant's benefit from the plaintiff's part performance is the amount by which he

has been enriched as a result of such performance * * *.

"Comment on Subsection (1): * *

"(d) Even if the plaintiff's non-performance is a breach of his contractual duty for which the defendant has a right to damages, there are many cases in which it is not just to permit the defendant to retain the whole benefit of the plaintiff's part performance without paying anything in return. If the benefit received by the defendant is no more than his harm, he owes nothing to the plaintiff. But if the benefit received is more than the amount of his harm, to let him retain the excess would not only be giving him something for nothing, it would also be making the plaintiff suffer a penalty for his wrong in excess of the compensatory damages that are held to be a fully adequate remedy in actions for wrongful breach."

The exception to the rule stated, where the breach or non-performance is wilful and deliberate, must be distinguished from a breach (within the rule) committed knowingly, if the result of negligence, error of judgment, mistake of fact or law; or is due to hardship, insolvency, or circumstances that tend appreciably toward moral justification. Restatement of Law, Contracts, § 357, Comment on Subsection 1, subsection e.

The circumstance of the inspection of the blueprints which appellee was not allowed to keep or study, and the absence of any identified specifications, tend to justify appellee taking the position that the duplex was not complete. Also, considering the difficulty she experienced in trying to meet with appellants to resolve their differences and appellants' action in forfeiting the property without notice, appellee's default cannot be said to fall within the exception.

The court did not err, therefore, in holding that appellee was entitled to restitution.

The last question for our consideration is the correctness of the court's action in entering judgment against the appellants, J. W. Anderson and Magel Anderson, severally, and jointly with the appellant Home Builders and Suppliers, Inc.

The court based the judgment on its finding that

"* * * Anderson, in this deal, used his individual and corporate entities interchangeably, and to suit his convenience. It was never made clear to plaintiff that she was only dealing with one or the other. * * *"

■■ Before a court is entitled to disregard the corporate entity there must be a resulting injustice in addition to a situation that justifies a finding that the corporation is the alter ego of the individual.

"Before the acts and obligations of a corporation can be legally recognized as those of particular person, and *vice versa,* the following combination of circumstances must be made to appear: First, that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice." Minifie v. Rowley, 187 Cal. 481, 202 P. 673, 676; quoted in Phoenix Safety Investment Co. v. James, 28 Ariz. 514, 237 P. 958.

There being no evidence of an injustice to appellee, we hold that the court erred as a matter of law in entering judgment against the appellants J. W. Anderson and Magel Anderson.

The judgment against J. W. Anderson and wife is reversed. In all other respects the judgment is affirmed, appellee to recover her costs against appellant Home Builders and Suppliers, Inc.

STANFORD, C. J., and PHELPS, LA PRADE and WINDES, JJ., concur.