543 P.2d 142

**Louis P. YOUNGREN, Individually, Appellant,**

v.

**Richard A. REZZONICO, Appellee.**

**No. I CA–CIV 2696.**

Court of Appeals of Arizona,
Division 1,
Department A.

Dec. 9, 1975.

Rehearing Denied Jan. 15, 1976.

Review Denied Feb. 10, 1976.

Price, Tinney, Lindberg & Gianas, by John Price, Tucson, for appellant.

Mangum, Wall & Stoops, by Daniel J. Stoops, Flagstaff, for appellee.

## OPINION

OGG, Presiding Judge.

The controlling question in this case is whether it was proper to set aside the corporate entity under the "alter ego" theory and hold a stockholder liable for a corporate debt.

The defendant-appellant Louis P. Youngren, as President of Taurus Industries, Inc., purchased a registered quarter horse from the plaintiff-appellee Richard A. Rezzonico. As payment for the horse Rezzonico received a $10,000 promissory note signed by Louis P. Youngren, as President of Taurus Industries, Inc. When the note was not paid and Taurus Industries, Inc. went into bankruptcy, Rezzonico brought suit to collect the note from Youngren as an individual.

The case was tried to a jury and a verdict and judgment thereon was rendered in favor of Rezzonico and against Louis P. Youngren. Youngren now brings this appeal.

It is Youngren's position that the corporation Taurus Industries, Inc. has the sole obligation to pay the judgment.

■ Where there has been proper compliance with statutory requirements for the formation of a corporation, the private property of a stockholder cannot normally be reached to satisfy corporate debts. *Employer's Liability Assurance Corporation v. Lunt*, 82 Ariz. 320, 313 P.2d 393 (1957);

*Ferrarell v. Robinson,* 11 Ariz.App. 473, 465 P.2d 610 (1970).

In this case Taurus Industries, Inc. had complied with the statutory requirements (§ 10–122, subsection 9, Arizona Revised Statutes Annot.) exempting its shareholders private property from liability for corporate debts.

Arizona case law has specifically stated that:

"Before a court is entitled to disregard the corporate entity there must be a resulting injustice in addition to a situation that justifies a finding that the corporation is the alter ego of the individual." *Home Builders & Suppliers v. Timberman,* 75 Ariz. 337, 344, 256 P.2d 716, 721 (1953).

*Dietel v. Day,* 16 Ariz.App. 206, 492 P.2d 455 (1972), further provides that:

"The corporate fiction will be disregarded when the corporation is the alter ego or business conduit of a person, and when to observe the corporation would work an injustice. The alter-ego status is said to exist when there is such unity of interest and ownership that the separate personalities of the corporation and owners cease to exist. *Employer's Liability Assurance Corporation v. Lunt,* supra; *Cooper v. Industrial Commission,* 74 Ariz. 351, 249 P.2d 142 (1952). See also, 18 Am.Jur.2d, Corporations §§ 13–16 (1965); and Fletcher, 1 Cyclopedia Corporations §§ 41.–41.3 (1963)."

The term injustice or unjust act as used in the Arizona cases is not easy to define. Injustice falls within the realm of equity and has been interpreted as:

"Equity is reluctant to permit a wrong to be suffered without remedy. It seeks to do justice and is not bound by strict common law rules or the absence of precedents. It looks to the substance rather than form. It will not sanction an unconscionable result merely because it may have been brought about by means which simulate legality. And

once rightfully possessed of a case it will not relinquish it short of doing complete justice." *Sanders v. Folsom,* 104 Ariz. 283, 451 P.2d 612 (1969).

In the case of *Employer's Liability Assurance Corporation v. Lunt,* 82 Ariz. 320, 313 P.2d 393 (1957), the Arizona Supreme Court was faced with the same questions presented by this appeal. In that case the court allowed the corporate veil to be pierced after finding the corporation was solely owned and controlled by one family and that the operations of the family were the alter ego of the corporation. The court found the alter ego with few factual details expressed in the opinion and concentrated on the other part of the inquiry as to whether the observance of the corporate form would sanction a fraud or promote injustice. The court found that the large purchase by the corporation at a time when its liabilities exceeded its assets, coupled with the fact that there was never any attempt to repay, could be the basis for the conclusion that the corporation did not intend to pay for the merchandise at the time of purchase.

In this jurisdiction it is also settled that a fraud may be perpetrated by the giving of a promise to perform a future act made with the present intention not to perform. *Waddell v. White,* 56 Ariz. 420, 108 P.2d 565 (1940); *Law v. Sidney,* 47 Ariz. 1, 53 P.2d 64 (1936). In the case under consideration the jury was submitted three interrogatories which are answered as follows:

"1. Did Defendant LOUIS P. YOUNGREN personally guarantee the Promissory Note to Plaintiff? Answer—no

2. Was the manner in which the corporation was conducted such that the corporate entity should be disregarded and LOUIS P. YOUNGREN be held personally liable on the Promissory Note? Answer—yes

3. Did LOUIS P. YOUNGREN practice any fraudulent conduct upon Plaintiff

RICHARD A REZZONICO in connection with the giving of the Promissory Note? Answer—no"

It should be noted that Youngren objected to interrogatories 1 (personal guarantee theory) and 3 (fraud theory), but there was no objection to interrogatory 2 (should the corporate entity be disregarded). The following instruction was given to the jury without objection.

"In the present case, the Plaintiff dealt with a corporation known as Taurus Industries, Inc. He urges that this is an appropriate case in which the legal entity of Taurus Industries, Inc. should be disregarded, and that he should be entitled to require payment of the indebtedness due him, if any, from Louis P. Youngren.

You should consider the following facts in determining whether or not to disregard the legal entity of Taurus Industries, Inc. and return a verdict in favor of the Plaintiff against Louis P. Youngren as an individual.

1. Whether or not Louis P. Youngren owned all the stock in Taurus Industries, Inc.

2. Whether or not Louis P. Youngren exercised direction and control over the management of the corporation known as Taurus Industries, Inc.

3. Whether or not Louis P. Youngren, directly or indirectly, furnished all, or substantially all, the financial investment in Taurus Industries, Inc.

4. Whether or not Taurus Industries, Inc. was adequately financed, either originally or subsequently, for the business in which it was to engage.

5. Whether or not there was actual participation in the affairs of Taurus Industries, Inc. by persons other than Louis P. Youngren, and whether stock was issued to them.

6. Whether or not Taurus Industries, Inc. observed the formalities of doing business as a corporation, such as the holding of regular meetings, keeping of corporate minutes, the issuance of stock, the filing of necessary reports, and similar matters.

7. Whether or not Taurus Industries, Inc. existed merely to do a part of the business of Louis P. Youngren and for his personal benefit.

If your determination of these facts, or most of them, as well as the other evidence in the case, leads you to believe that you should disregard the legal entity known as Taurus Industries, Inc., then you will be justified in returning a verdict against Louis P. Youngren individually in such amount as you may find due the Plaintiff.

On the other hand, if your consideration of these questions of fact, or most of them as well as the other evidence in the case, leads you to believe that Taurus Industries, Inc. should be considered a legal entity distinct from its individual members, then you will not return a verdict against Louis P. Youngren in any amount.

Before the acts and obligations of a corporation can be legally recognized as those of a particular person, and vice versa, the following combination of circumstances must be shown to exist:

1. That the corporation is not only influenced and governed by that person, but that there is such a *unity of interest and ownership that the individuality, or separateness, of the said person or other corporation or corporations has ceased;*

2. That the facts are such that adherence to *the fact of separate existence of the corporation would, under the circumstances, sanction a fraud or promote injustice."*

The trial court adopted the jury's answer to interrogatory 2 and entered a judgment holding Youngren personally liable to Rezzonico. We affirm this judgment.

■ In any review by an appellate court we must consider the evidence and possible inferences therefrom in a manner most favorable to upholding the judgment of the

jury and trial court. *Dietal v. Day,* supra; *City of Phoenix v. Burke,* 9 Ariz.App. 395, 452 P.2d 722 (1969).

■ The evidence was conflicting but that evidence which could justify the piercing of the corporate veil is set forth as follows: Youngren was the sole stockholder and made all decisions for the corporation. From time to time Youngren put personal funds into the corporation and withdrew corporate funds for personal use; he and his wife used vehicles owned by the corporation for their personal use; the formalities of the corporate meetings and corporate minutes were not followed; the actual ranch land upon which the corporation maintained its business was owned by Youngren; no notes were ever issued from the corporation to Youngren for money loaned to the corporation; there was a mixing of corporate funds and personal funds in the daily operation of the corporate business.

The court and jury could also have found that it would amount to an injustice or an unjust act to allow Youngren to escape payment of the note by hiding behind the corporate entity. At the time the horse was delivered to the corporation, Youngren knew the corporation was in a bad financial condition and was unable to pay the purchase price. At the time the corporation went bankrupt Youngren personally paid off some of the corporate debts but refused to pay the note. The fact finders in this case could find that Youngren purchased the horse, knowing the corporation was on the verge of bankruptcy, with no intention of paying the note.

This case presents a close fact question, but viewing, as we must, the evidence in a light most favorable to sustain the judgment, we believe there was sufficient evidence to justify the setting aside of the corporate entity and holding Youngren personally liable for the payment of the note.

Youngren claims it was also error for the court to refuse to admit a letter from Rezzonico's attorney to Youngren into evidence. The letter was an offer of settlement which stated the lawsuit could be settled by Youngren returning the horse to Rezzonico. Youngren's attorney answered the letter, rejecting the offer because the horse was at that time under the control of the bankruptcy court.

Youngren claims the refusal to admit such letter into evidence prejudiced his case since there was already evidence on the record that Youngren had repurchased the horse at the bankruptcy sale for $800. He wanted to show the purchase was not some devious scheme but was made so he could return the horse to Rezzonico and settle the lawsuit. The trial judge rejected the offer of the letter into evidence on the ground that such letter was inadmissible since it was an offer of compromise and settlement.

■■ A statement which is in the nature of an offer of settlement should normally be excluded from evidence. *Gallagher v. Viking Supply Corporation,* 3 Ariz.App. 55, 411 P.2d 814 (1966). Udall, *Arizona Law of Evidence* § 97. In this case under the state of the evidence we believe it would have been proper to introduce such letter into evidence since both parties had already put in testimony, without objection, relative to the repurchase of the horse and the alleged purpose of such repurchase. The fact that such letter was excluded, however, does not amount to reversible error since we do not believe the judgment in the case was materially affected by such ruling. Youngren was permitted in his opening and closing statements to the jury to explain the reason he repurchased the horse at the bankruptcy sale. On direct examination he was allowed to testify, without objection, that he repurchased the horse so he could return the horse and settle this lawsuit.

Youngren raises several other alleged errors which we have considered. In our opinion, none of the alleged errors is of sufficient magnitude to justify a reversal of this judgment.

Affirmed.

DONOFRIO, J., concurring.

HAIRE, Chief Judge, Division 1 (dissenting):

I dissent on the basis that the evidence was insufficient to justify submission of the alter-ego theory to the jury. Therefore, defendant's motion for directed verdict on this issue should have been granted. Inasmuch as the jury expressly found the personal guarantee and fraud issue in defendant's favor, the judgment should be reversed and remanded with directions to enter judgment for the defendant.