654 P.2d 301

HONEYWELL, INC., a corporation,
Plaintiff-Appellee,

v.

ARNOLD CONSTRUCTION COMPANY,
INC., an Arizona corporation; and Safe-
co Insurance Company, an Insurance
Co., Defendants-Appellants.

ARNOLD CONSTRUCTION COMPANY,
INC., an Arizona Corporation; and Sa-
feco Insurance Company, an Insurance
Co., Plaintiffs-Appellants,

v.

John H. OWENS and Joan M. Owens,
Defendants-Appellees.

No. 1 CA–CIV 5148.

Court of Appeals of Arizona,
Division 1, Department B.

Sept. 23, 1982.

Goldman & Kaplan, Ltd. by Morris A. Kaplan, Phoenix, for appellee Honeywell, Inc.

Taylor & Petica, P.C. by Ron Petica, Scottsdale, and James V. McMahon, Phoenix, for appellees Owens.

Peter T. D'Angelo, Phoenix, for appellants.

## OPINION

GRANT, Judge.

This case was originally brought by Plaintiff-Appellee Honeywell, Inc., under Arizona's public construction bonding statute, known as the "Little Miller Act," A.R.S. §§ 34–221 to 224.[1] The facts material to a resolution of the issues presented are as follows. On July 22, 1975, Arnold Construction Company was awarded the general contract for construction of a business education addition to the Trevor G.

---

1. Arizona's statute is patterned after, and highly similar to, the federal Miller Act, 40 U.S.C. §§ 270a–270d (1976 & Supp. IV 1981). *See* Haug, *Arizona's Little Miller Act,* 5 Ariz.Bar J. No. 2, p. 13 (1969).

Browne High School in Phoenix, Arizona. On the same day Arnold executed a payment bond, required by A.R.S. § 34–222, naming Safeco Insurance Company of America as its surety. Shortly thereafter, Arnold subcontracted the ventilation work to Southwest Air Conditioning, Inc. Southwest in turn hired Honeywell, Inc. to furnish and install a "comprehensive pneumatic system of automatic temperature control," which would be connected to the high school's fire alarm system.

Work progressed with no apparent difficulty. Arnold fully paid Southwest except for the contractual ten percent retention, which would only become payable ten days after Arnold received full payment for the entire project. The architects issued their certificate of substantial completion for the whole addition, effective June 1, 1976. On that same date, the project engineer issued a "punch list," identifying various items still requiring completion, repair or replacement before the project would be finished. Honeywell continued to perform both the punch list and other work at the construction site, after the June 1st substantial completion date, until approximately October 21, 1976. Characterization of this work, more completely described below, is the central issue in this appeal.

Honeywell first notified Arnold by letter dated June 14, 1976, that Southwest had failed to pay them any amounts due on their $31,127.00 contract. Again, on July 21, 1976, Honeywell sent written notice to Arnold which said that they still had not been paid by Southwest. This letter further stated that if payment was not soon made, Honeywell would look to Arnold and Safeco for satisfaction of the debt. On September 16, 1976, Honeywell sent one last letter to Arnold indicating that suit would be brought against Arnold's payment bond if the debt remained unsatisfied by the end of the month. Honeywell received no payment.

2. This case comes to us as the result of a somewhat tortuous litigation below. For the sake of clarity, we have concerned ourselves

On June 21, 1977, Honeywell filed suit against Arnold, Safeco and Southwest for payment of the $31,127.00 contract price.[2] Arnold cross-claimed against Southwest for any amounts it would be found to owe Honeywell. Arnold also filed a third party complaint against John and Joan Owens, claiming they were alter egos of Southwest and therefore liable for its debts.

Honeywell moved for, and was granted, judgment on the pleadings against Southwest, who did not contest the motion. At the end of Arnold's presentation of evidence, the Owenses moved for a directed verdict in their favor on Arnold's third party complaint. The motion was granted, relieving the Owenses of any possible personal liability. Upon completion of the nonjury trial, the court granted judgment in favor of Honeywell against Arnold and Safeco. Additionally, Arnold was granted judgment against Southwest on its cross-claim. Arnold's and Safeco's subsequent motion for new trial was denied. Filing a timely notice of appeal, Arnold and Safeco challenged the judgment in favor of Honeywell and the directed verdict granted in favor of the Owenses. They also appealed the denial of their motion for a new trial.

We first address the challenge by Arnold and Safeco to the judgment in favor of Honeywell. As noted above, Honeywell's suit was brought under authority of Arizona's A.R.S. §§ 34–221 to 224. This statute generally covers the award, execution and performance of public construction contracts. The general contractor on a public construction project is required to furnish, "[a] payment bond in an amount equal to the full contract amount solely for the protection of claimants supplying labor or materials to the contractor or his subcontractors in the prosecution of the work . . . ." A.R.S. § 34–222(A)(2). A right of action against this payment bond is granted to subcontractors, and their labor or materialmen, in the event they are not fully paid within ninety days from the date on which

with only those facts and proceedings pertinent to a disposition of the matter.

they last performed labor or furnished materials. A.R.S. § 34–223. The right of action contains, however, two significant limitation periods. First, one not having a direct contractual relationship with the general contractor who furnished the bond, but who has such a relationship with one of his subcontractors, must give the general contractor written notice of the claim within ninety days from the date on which he last performed labor or supplied materials. A.R.S. § 34–223(A). Second, every suit brought under this statute must be commenced within "one year from the date on which the last of the labor was performed or materials were supplied...." A.R.S. § 34–223(C).

While they do not contest the timeliness or adequacy of compliance with the ninety day notice period, Arnold and Safeco argue that Honeywell has run afoul of the one year period of limitation for filing the action. Specifically, Arnold and Safeco contend that Honeywell performed no work of sufficient magnitude to constitute "labor ... performed or materials ... supplied" within one year prior to the filing of its complaint on June 21, 1977. They claim that any work done by Honeywell within the statutory period was only for minor repair or correction of defects. [Honeywell filed its complaint on June 21, 1977.] The focus of our inquiry is therefore whether any of the work performed by Honeywell between June 21, 1976, and October 21, 1976, the last date on which it claims to have performed anything under the contract, could be considered labor performed or materials supplied within the meaning of A.R.S. § 34–223(C).

We note the conspicuous lack of reported decisions dealing with Arizona's version of this statute. Because our formulation so closely follows the federal legislation, however, federal cases interpreting the Miller Act are highly persuasive. *Western Asbestos Co. v. TGK Construction Co., Inc.*, 121 Ariz. 388, 590 P.2d 927 (1979). We also note that cases dealing with either the ninety day notice provision or the one year limitation period are applicable for our analysis, since both periods begin to run and are measured from the date on which the last labor was performed or materials supplied by the plaintiff.

The applicable test asks whether the work was done in furtherance of the original contract, or whether it was for the purpose of correcting defects or making repairs. *United States ex rel. Austin v. Western Electric Co.*, 337 F.2d 568 (9th Cir. 1964). Work done solely to effect repairs, make corrections or complete a final inspection is insufficient to qualify as work pursuant to the original contract and is not considered work performed or material supplied within the one year statutory limitation. *General Insurance Co. of America v. United States ex rel. Audley Moore & Son*, 406 F.2d 442 (5th Cir.1969) *rehearing denied*, 409 F.2d 1326 (5th Cir.1969) *cert. denied*, 396 U.S. 902, 90 S.Ct. 214, 24 L.Ed.2d 178 (1969); *United States ex rel. Erie City Iron Works v. Fullerton Construction Co.*, 298 F.Supp. 1157 (D.S.C.1969); *United States ex rel. Laboratory Furniture Co. v. Reliance Insurance Co.*, 274 F.Supp. 377 (D.Mass.1967); *United States ex rel. T Square Equipment Corp. v. Gregor J. Schaefer Sons, Inc.*, 272 F.Supp. 962 (E.D.N.Y.1967). "Labor furnished in the prosecution of the work is not co-terminous with the outer limits of all duties provided by the contract." *General Insurance Co. of America v. United States ex rel. Audley Moore & Son*, 409 F.2d at 1327. Yet, the one year limitation period does not necessarily begin to run merely because a project has been declared "substantially complete." *United States ex rel. Austin v. Western Electric Co.* Furthermore, because tasks are simple in nature does not preclude their characterization as integral parts of the contract. *United States ex rel. Joseph T. Richardson, Inc. v. E.J.T. Construction Co.*, 453 F.Supp. 435 (D.Del.1978).

Examination of the record discloses several instances within the relevant year during which Honeywell employees visited the construction site to perform various tasks. On approximately June 24, 1976, Honeywell was notified that the smoke detector system

it supplied had not been electrically connected to the central fire alarm panel. In recognition that this work was specifically required by the electrical plans, Honeywell engineer Moosa Marafi designed a "relay" which would accomplish the task. He gave both the plan and the actual device to another employee, Secrest, who delivered it to an electrician at the site for installation. Lazar, a Honeywell employee in the computer field, programmed a computer panel known as "group 12" into the master control system memory on October 9, 1976. This was done in order that the panel could monitor air and temperature conditions, triggering the fire alarm system in case of emergency. Lastly, on October 21, 1976, Marafi received a thirty-five millimeter slidegraphic, which he had designed, from Honeywell's main factory and gave it to Lazar. Lazar took the slide to the construction site. The slidegraphic, a schematic diagram of the system on a transparency, was needed so that the system operator could, in times of emergency refer to it in pinpointing the exact spot where there was fire or other trouble. Marafi testified that the slidegraphic was important to proper and efficient functioning of the system as a whole, likening it to the gasoline or other gauges found in an automobile.

Viewing the facts, as we must, in a light most favorable to support the trial court's judgment we cannot say that the above described tasks performed by Honeywell employees were insufficient, as a matter of law, to toll the one year limitation period. In all three instances the work performed was essential to the proper complete functioning of the temperature control system in furtherance of the original contract and clearly was not repair oriented or corrective in nature, despite performance after the certification of substantial completion. *Cf. Johnson Service Co. v. Transamerica Insurance Co.,* 485 F.2d 164 (5th Cir.1973) (rewiring and recalibration of cooling equipment sufficient to toll a ninety day notice period analogous to that found in Miller Act); *United States ex rel. Noland Co. v. Andrews,* 406 F.2d 790 (4th Cir.1969), (missing valves furnished after acceptance

of project by government toll running of ninety day period); *Trinity Universal Insurance Co. v. Girdner,* 379 F.2d 317 (5th Cir.1967) (replacement of defective pipe insulation and air conditioning seal at demand of government inspector before work would be accepted tolled one year limitation).

Cases cited by Arnold and Safeco serve only to highlight the difference between what is properly considered repair and what, as we have here, must be considered work performed in direct completion of the contract. *General Insurance Co. of America v. United States ex rel. Audley Moore & Son* was a case in which the only "work" plaintiff-subcontractor did within one year of filing the complaint was enter the construction premises to make a final inspection in preparation of a final statement. In *United States ex rel. Erie City Iron Works v. Fullerton Construction Co.,* the tasks claimed to have been performed within one year of the complaint were done pursuant to a one year guaranty clause in the prime contract, but were undeniably reparative in nature. The court relied on the true nature of the work, discarding the notion that the limitation period was tolled simply because the work was performed pursuant to the guarantee provision of the original contract. Similarly, in *United States ex rel. Laboratory Furniture Co. v. Reliance Insurance Co.* the only work performed within the relevant one year span was the replacement of identification buttons, on faucets and gas nozzles, which the plaintiff had improperly supplied in the first place. Lastly, the plumbing subcontractor in *United States ex rel. T Square Equipment Corp. v. Gregor J. Schaefer Sons, Inc.* claimed that inspection and testing of a previously installed boiler and certain valves within one year of its complaint was sufficient to toll the otherwise expired one year period. The court stated that "[n]either the inspection of work already installed, nor the correction of defective work, will extend the statutory period." 272 F.Supp. at 964. We agree. The work performed by Honeywell under the presently considered contract within one year of its complaint, however, was

without question in furtherance of the original work and basically different in kind from that described in the above cases. The limitation period therefore did not expire and, we conclude, Honeywell's action was timely filed.

Arnold and Safeco further charge that Honeywell is equitably estopped from bringing its "Little Miller Act" suit. They argue that Honeywell unfairly waited to file its claim until Arnold had almost fully paid Southwest. Arnold explains that at this point it no longer owes enough money to Southwest, which it could withhold, to satisfy Honeywell's claim of non-payment. In this manner, Arnold and Safeco contend, Honeywell in effect "bankrolled" Southwest, silently allowing Arnold to pay Southwest while, at the same time, Arnold unknowingly incurred liability for Southwest's failure to pay its own obligations. Essentially, the argument is that Honeywell, having "allowed" Arnold to lose its leverage against Southwest by not earlier complaining about non-payment, should not now be heard to complain about Southwest's failure to pay.

■ Estoppel, usually predicated upon conduct which induces another to detrimentally change his position in reliance thereon, has three recognized elements. "First, acts inconsistent with the claim afterwards relied on; second, action by the adverse party on the faith of such conduct; third, injury to the adverse party resulting from the repudiation of such conduct." *Holmes v. Graves,* 83 Ariz. 174, 177, 318 P.2d 354, 356 (1957). A correlative essential element of estoppel is that one seeking its protection must have lacked knowledge, and the means of acquiring knowledge, of the facts relied upon. A party's silence will not operate as an estoppel against it where the means of acquiring knowledge were equally available to both parties. *Jarvis v. State Land Department,* 104 Ariz. 527, 456 P.2d 385 (1969), *modified on other grounds,* 106 Ariz. 506, 479 P.2d 169 (1970), *injunction modified,* 113 Ariz. 230, 550 P.2d 227 (1976). *See* 28 Am.Jr.2d Estoppel and Waiver § 80 (1966). Additionally, for silence to consti-

tute an estoppel, there must have been some duty to speak. *Jarvis v. State Land Department.*

■ Under the facts of this case we cannot conclude that Honeywell was equitably estopped from bringing this action. The only "duty to speak" attributable to Honeywell was the requirement to notice its claim within the statutory ninety day period, and to commence its claim within the one year limitation period. A.R.S. § 34–223. More importantly, the contractual documents themselves clearly granted Arnold the means by which it could ascertain, before paying Southwest, whether Southwest was fulfilling its own obligations to sub-tier contractors and materialmen. Condition number three of the subcontract between Arnold and Southwest provides in part as follows:

Subcontractor shall pay any and all bills when due for all charges in connection with its work, and failure to do so shall constitute failure of performance under this Subcontract. In order to protect Arnold from all claims and liens of whatsoever nature, it is agreed that ... the Subcontract price shall not become due and payable until all labor, material ... and all other charges without limitation ... have been fully paid .... If required by Arnold, releases showing payment in full shall be furnished by Subcontractor prior to Arnold's payment of any sums to Subcontractor.

As is self-evident, the means of determining whether Southwest was fulfilling its commitments was peculiarly within Arnold's possession. Arnold cannot cast upon Honeywell its own unexplained failure to invoke the procedural method of self-protection expressly provided in the agreement. The claim of equitable estoppel must fail.

Lastly, Arnold and Safeco appealed the directed verdict granted in favor of the Owenses. The third party complaint brought against the Owenses by Arnold and Safeco asked the court to disregard the corporate entity known as Southwest Air Conditioning, Inc. and expose the Owenses to personal liability for a debt facially in-

curred by the corporation. This is justified, contend Arnold and Safeco, because the Owenses have conducted the business in such a fashion that they may be considered "alter egos" of the company, and are therefore responsible for its obligations.

 Where a corporation has been properly created, the personal assets of a stockholder may not normally be reached to satisfy corporate debts. In order for a corporate "veil" to be pierced, the corporation must be considered the alter ego of the individual whose property is sought. Additionally, there must be some form of injustice shown were the corporate existence to be honored and allowed to "shield" the individual from liability. *Youngren v. Rezzonico,* 25 Ariz.App. 304, 543 P.2d 142 (1975).

On reviewing the grant of a directed verdict, we must regard the evidence, and all reasonable inferences, in favor of the party who opposed the motion. *W.R. Skousen Contractor, Inc. v. Gray,* 26 Ariz. App. 100, 546 P.2d 369 (1976). Despite viewing the above evidence most favorably to Arnold and Safeco, we cannot conclude that sufficient facts exist to find that the Owenses were alter egos of Southwest.

The record reflects that John and Joan Owens were the sole shareholders of Southwest. They were also its only officers and directors, exercising all control and management of the company's activities. The corporation leased its premises from the Owenses paying in return a monthly rent. On occasion the Owenses loaned funds to the corporation, but were repaid with interest. Southwest maintained a general ledger for each account, posting invoices received by suppliers and subcontractors as they were received.

There was no commingling of personal and corporate funds. Neither were there allegations made nor evidence presented that the Owenses diverted corporate property for their personal use. The formalities of corporate meeting were observed and the books were kept in some form of order. The Owenses did not so closely intermix their actions with those of the corporation such as to justify finding a merger of identities. Additionally, we can find no injustice stemming from recognition of the corporate form in this case. As above noted, Arnold has succeeded in showing only that its injury was self-inflicted through failure to adequately monitor the dealings of Southwest with Honeywell. Simply put, Arnold could have prevented the problem by insisting, as was its contractual right, that Southwest produce evidence that it was satisfying its own obligations. The corporate identity must stand.

We have determined that Honeywell timely brought its "Little Miller Act" suit, that there was no equitable estoppel, and that the trial court correctly granted a directed verdict in favor of John and Joan Owens. As a result, we also find the trial court acted correctly in denying the motion for new trial. The disposition of this case by the trial court is affirmed in all respects.

JACOBSON, J., and RICHARD M. DAVIS, J. Pro Tem., concur.

NOTE: The Honorable Richard M. Davis, a Judge *pro tempore* of a court of record, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Const. art. VI, § 20.