In re Albert W. NASH, aka A.W. Nash; Joyce H. Nash; and Albert W. Nash, as Trustee for the A.W. Nash Family Trust, Debtors.

PALO VERDE MANAGEMENT AND FINANCIAL SERVICES CO., an Arizona corporation, Movant/Appellee,

v.

Albert W. NASH, aka A.W. Nash; Joyce H. Nash; and Albert W. Nash, as Trustee for the A.W. Nash Family Trust; Robert Busch, Trustee in Bankruptcy, Respondents,

and

Mary L. Ward, secured creditor, Intervenor/Appellant.

In re WARE PROPERTIES, INC., Debtor.

PALO VERDE MANAGEMENT AND FINANCIAL SERVICES CO., an Arizona corporation, Movant/Appellee,

v.

WARE PROPERTIES, INC., and Robert Busch, Trustee in Bankruptcy, Respondents,

and

Mary L. Ward, secured creditor, Intervenor/Appellant.

BAP Nos. A2–85–1046–MAbV, AZ–85–1047–MAbV.

Bankruptcy No. B–83–2590–PHX–GBN.

Adv. No. H.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted October 16, 1985.

Decided April 9, 1986.

Norman D. James, Ryley, Carlock & Applewhite, Phoenix, Ariz., for intervenor/appellant.

Robert S. Porter, Ellis, Baker, Lynch, Clark & Porter, Phoenix, Ariz., for movant/appellee.

Before MEYERS, ABRAHAMS and VOLINN, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### I

These are two appeals from the granting of parallel motions for relief from the automatic stay on a single-family residence owned by one of the Debtors, Albert Nash, who controlled the other debtor, Ware Properties, Inc. Both debtors are in separate Chapter 7 proceedings. Nash had issued a note to Ware Properties which was negotiated to the Appellee, Palo Verde Management and Financial Services Company ("Palo Verde"). This note is secured by a lien on the residence. Palo Verde moved in each bankruptcy proceeding to lift the automatic stay.

Mary Ward intervened to challenge the validity of Palo Verde's lien. Ward originally owned the residence, which is the subject of this appeal. In danger of foreclosure, she agreed to sell her home to Nash, who agreed to assume the existing first trust deed of $14,100, pay Ward $8,000 in cash on or before close of escrow and to give her a promissory note secured by the property for the balance of $14,170. This note carried a 10% interest rate and was for a 15-year term. An addendum to the contract provided that Nash could obtain a new loan on the premises in an amount sufficient to at least return his investment and costs. Ward agreed that such a new loan would have priority over her trust deed.

On July 21, 1982, after executing escrow instructions and a deed, Ward received a $1,000 advance on the downpayment, which she used to move into an apartment.

Neither Nash nor his company, Ware Properties, had enough cash to consummate the deal with Ward. Thus, Nash and Ware Properties entered into a deal with Palo Verde. Nash and Ware Properties created a note to discount to Palo Verde. Ware Properties was payor and Albert and Joyce Nash, payees, on a $18,500 promissory note. Albert Nash signed both as payor in his capacity as president of Ware and as payee in his individual capacity. No cash changed hands. Nash later testified that the consideration for the note was a ledger entry which could not be found at trial. However, Nash testified at trial that he routinely and indiscriminately had commingled personal and corporate funds since 1981.

A separate escrow account was opened between Nash and Palo Verde with the same escrow officer used by Ward. Palo Verde agreed to pay Nash $16,334 for the

$18,500 note and deed of trust, plus a commission.

In July, Ward went to the title office where she learned that Nash had taken out an $18,500 loan on the property. Although expressing concern about the amount of the loan, Ward signed an escrow amendment subordinating her lien to third position rather than terminate the sale. Escrow closed on August 20, 1982. Ward received a check for the balance of the downpayment.

After paying Ward, Nash retained $8,593.50, the balance of the proceeds of the sale of the Ware-Nash note, which he deposited in the Ware corporate account.

On September 13, 1983, separate bankruptcy proceedings were commenced by Nash and Ware Properties. Each filed identical schedules stating that the debtor owned the single-family residence, which is the subject of this appeal.

On February 17, 1984, Palo Verde Management filed motions in each bankruptcy case for relief from the automatic stay. The Debtors and the Trustee did not object to the lifting of the stay. However, the Appellant, Ward, was allowed to intervene. Ward alleged that the Appellee's lien was invalid and unenforceable against the property as a matter of Arizona law.

The trial court held Palo Verde's lien was valid and lifted the stay in both bankruptcy proceedings. 49 B.R. 254. Notices of appeal were filed in both cases on May 24, 1985.

We AFFIRM the trial court's order granting relief from the automatic stay.

## II

### DISCUSSION

Ward argues that Palo Verde's lien is void because the note on which it is based is invalid. Four arguments have been advanced to this end by Ward. First, the note is invalid because the identities of Ware Properties and Nash had totally merged prior to this transaction, which rendered any contract between them a nullity.

Second, no consideration was given by Nash for the issuance of the note by Ware Properties. Third, the note was not the new loan to which Ward had agreed to subordinate her lien. Lastly, Palo Verde was not a holder in due course and, thus, took the note subject to all defenses. These arguments are not persuasive.

### A. *Fraud is Required to Pierce the Corporate Veil*

■ Ward's first argument fails because under Arizona law corporate form will not be lightly disregarded. *Chapman v. Field,* 124 Ariz. 100, 602 P.2d 481, 483 (1979). Therein, the Supreme Court of Arizona held that disregard for the corporate form coupled with a constant course of commingling of personal and corporate funds would not justify piercing the corporate veil. 602 P.2d at 484. The Supreme Court held that fraud must be shown in order to disregard corporate form. 602 P.2d at 484. That a party does not receive the full benefit of her bargain does not alone constitute evidence of fraudulent conduct. Indeed, in *Chapman v. Field,* there was conduct that could be seen as even more egregious than that complained of here. There the defendants lent money to the corporation without taking promissory notes, failed to file annual reports with the Arizona Corporation Commission and failed to keep proper books of account. 602 P.2d at 484.

The trial judge found that there was no fraud in the instant case. After a close examination of the record on appeal, we cannot say that this finding is clearly erroneous. *See In re Bialac,* 712 F.2d 426, 429 (9th Cir.1983); *In re Teichman,* 774 F.2d 1395, 1397 (9th Cir.1985). Nash paid $8,000 to Ward by closing, assumed the first trust deed of $14,100, invested $3,000 in improvements to the house and made all the payments required during the first year on the note owed to Ward.

There was disclosure of the fact and amount of the new loan. More importantly, Ward did receive a valid lien which attached to at least some equity in the home which the trial court valued at $39,-

000. Therefore, the trial court's finding that there was no fraudulent intent was not clearly erroneous.

As a result, nothing prevented Nash from entering into a valid contract with a corporation that he controlled.

The Dissent relies heavily on *dicta* by several Arizona courts that in the absence of a finding of fraud, injustice may also be a factor in disregarding corporate form. *Home Builders & Suppliers v. Timberman*, 75 Ariz. 337, 256 P.2d 716, 721 (1953); *Employer's Liability Assurance Corporation v. Lunt*, 82 Ariz. 320, 313 P.2d 393, 395 (1957); *Honeywell, Inc. v. Arnold Const. Co., Inc.*, 134 Ariz. 153, 654 P.2d 301, 307 (1982); *Youngren v. Rezzonico*, 25 Ariz.App. 304, 543 P.2d 142, 144 (1976). Not every court has mentioned injustice as a factor in piercing the corporate veil. See *Chapman v. Field, supra*, 602 P.2d at 484; *Ferrarell v. Robinson*, 11 Ariz.App. 473, 465 P.2d 610, 613 (1970). However, virtually every court has noted that there is a great reluctance under Arizona law to disregard corporate form. *See Chapman v. Field, supra*, 602 P.2d at 483. A careful examination of Arizona case law reveals that no modern Arizona court has ever pierced the corporate veil unless it found that fraud existed. A better statement of the test actually used in practice by Arizona courts is that fraud, or injustice amounting to fraud, must be found to exist. The Dissent uses the "injustice" *dicta* to create new Arizona law in the guise of following established law.

Further, assuming *arguendo* that the injustice test is used in Arizona, there was no injustice in this case; it was simply a bad business deal. The Dissent admits that Mrs. Ward received $8,000 at the time of closing while ignoring that Mrs. Ward also received a year's payments from Nash on her note as well as having her equity protected by $3,000 in repairs made by Nash. This is valuable consideration in a deal gone sour, not fraud, and does not strike the majority as being manifestly unjust treatment.

### B. *Adequate Consideration Exists*

■ Ward's next argument also fails. There was consideration for the note between Nash and Ware Properties. Ware Properties gave its note and deed of trust to Nash. Nash in return provided financing for the purchase of Ward's house. This financing was essential to the deal's completion. As the trial court found, at least $7,396 of the note's proceeds went to fund the escrow with Ward. The remainder was deposited in Ware Properties' account. Later Ware Properties benefited from Nash's expenditure of $3,000 to make improvements in the home.

The fact that Nash did not provide financing for Ware Properties simultaneously with the execution of the note does not render the note a sham. A promise to provide future financing for a real estate contract is enforceable under Arizona law. *K-Line Builders v. First Fed. Sav. & Loan*, 139 Ariz. 209, 677 P.2d 1317, 1320 (1983). Nash promised to and did provide financing for Ware Properties to buy Ward's home in return for Ware Properties' note.

### C. *Nash's Note was a New Loan*

■ Ward contends that the note between Ware Properties and Nash was not the "new loan" to which Ward agreed to subordinate her purchase money deed of trust. As the trial court found, the note executed by Ware Properties and discounted to Palo Verde was a legitimate loan. There was no requirement in the real estate purchase contract that Ward be informed of the identity of the lender, the terms or amount of the new loan. The trial court found that Ward learned in July of 1982, before the close of escrow, that Nash had in fact taken out a new loan of $18,500. Ward then signed an escrow amendment that relegated her lien to third position rather than terminate the sale. Prior to signing this amendment Ward discussed this matter with her own broker, now deceased. Though Ward now claims that she did not sign the escrow amendment until after the close of escrow on August 20,

1982, we cannot say that the trial court's determination is in error. *See In re Bialac, supra,* 712 F.2d at 429. Further, Ward admits she did sign the escrow amendment after she knew the amount of this loan. Regardless of the exact timing of the signature, Ward is estopped from claiming that she had no knowledge of the loan or of its amount. There was disclosure.

The term "in an amount at least sufficient to return buyer's investment and cost" does not establish an illusory standard to limit Nash's new loan or to deceive Ward. She knew the amount of the new loan. Also, the term "at least" established not a ceiling but a floor for Nash's loan.

California has established judicially imposed standards to limit contract terms that subordinate prior liens to later loans. *Handy v. Gordon,* 65 Cal.2d 578, 581, 55 Cal.Rptr. 769, 422 P.2d 329 (1967). An enforceable subordination clause must contain terms that will define and minimize the risks that the subordinating liens will impair or destroy the seller's security. 65 Cal.2d at 581, 55 Cal.Rptr. 769, 422 P.2d 329. Ward argues that we should apply this standard. However, this is California, not Arizona, law.

■ The Arizona Supreme Court has mandated that parties must be bound by contracts they enter into, absent fraud or duress. *Hernandez v. Banco de las Americas,* 116 Ariz. 552, 570 P.2d 494, 498 (1977). In interpreting state law, we are not free to impose California law on Arizona. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Thus, since Ward agreed that the note for $18,500 would have priority over her lien, we are not free to void it now. Given our disposition of Ward's challenges to the note, it is moot as to whether Palo Verde was a holder in due course.

### III

### CONCLUSION

In hindsight it is clear that Ward entered into a business deal that turned sour. Three months behind in her payments on the first trust deed, she was in some danger of foreclosure. With the aid of a professional real estate agent, she opted to sell her property to a buyer who was himself over-leveraged. This deal could be consummated only by Ward's knowing subordination of her lien rights to an $18,500 security interest in a modest house already carrying a first trust deed. Nash did not cause Ward's financial problems nor could he solve his own. This does not justify the creation of new Arizona law by a federal court to void the lien of a third party, Palo Verde. Thus, we AFFIRM.

SIDNEY C. VOLINN, Bankruptcy Judge, dissenting:

I respectfully dissent.

### I.

The facts stated by the majority are correct. However, there are inferences to be drawn from the condition of the parties which may provide a different perspective. Nash, who did business as Ware Properties, Inc., was a person of long and varied experience in dealing with real estate and the financing thereof. Mrs. Ward lived in a modest home worth about $36,000. She owed Utah Mortgage Co., on a first mortgage, some $14,000 and was delinquent in several house payments of $135.00 per month. She concluded that she would sell and have the benefit of her equity of some $22,000. She went to a broker, Susan Wood, now deceased, who introduced her to Nash. They agreed on a sale for $36,000 nominally to Ware Properties, Inc. The purchaser was to pay $8,000 cash (from which would be paid the real estate commission, the delinquencies and late charges), assume the Utah mortgage of $14,000, and give Mrs. Ward a note for $14,000 payable in monthly installments over 15 years secured by a second mortgage. An escrow was set up from which Mrs. Ward received $1,000 with which she moved from the house to an apartment.

Thereafter, Nash induced Mrs. Ward to sign altered escrow documents which pro-

vided Ware with authority to borrow $18,-000 which could be secured by a lien on the Ward property superior to her second mortgage. Ware Properties, Inc. then wrote a note and mortgage to Nash for which no consideration was furnished. This note was admitted by Nash to have been written to evade usury laws. The note and mortgage were assigned to Palo Verde for the sum of $16,000 which was received by Nash.

The result of these machinations was that Mrs. Ward received cash of about $6,000 and credits for delinquent mortgage payments and a real estate commission totaling about $2,000; in all, close to $8,000. Of the $16,000 received from Palo Verde, Nash retained about $8,500. As to Mrs. Ward's remaining equity in the property which was to have been secured by a $14,-000 second lien behind a first of $14,000, it now ran behind $14,000 plus $18,000 or a total of $32,000. For all practical purposes, when she signed the amended escrow documents she gratuitously signed away her equity in the property.

## II.

There was no consideration for the note from Ware Properties, Inc. to Nash. There was not even a contemporaneous record of the transaction.

Ware Properties, Inc. was the *alter ego* of Nash in that the separate identities had merged prior to the execution of the note and trust deed. Thus, Ware Properties, Inc. and Nash were incapable of contracting with each other, and the promissory note and trust deed were void and unassignable.

The evidence before the Bankruptcy Court was virtually undisputed that Ware Properties, Inc. was the *alter ego* of Nash. The court stated that "[t]he constant commingling of corporate and personal funds certainly points in that direction." Memo. Dec. at 13. In addition, the court found:

> There can be no dispute debtors did not respect the status of Ware Properties as

a separate legal entity, or that the corporation's books are out of balance and incomplete. There likewise can be no credible argument that $18,500 in cash actually changed hands. Debtors admit they treated corporate and personal accounts as one and the same as early as 1981. Transcript, at 49–58, 97.

The majority relies heavily on *Chapman v. Field*, 124 Ariz. 100, 602 P.2d 481 (1979), for the proposition that fraud is required to pierce the corporate veil. The correct test, however, is excessive disregard of and commingling of corporate and individual identities, coupled with fraud or injustice. There is substantial Arizona authority holding that injustice is a factor that activates application of the *alter ego* doctrine. This rule was first enunciated in *Phoenix Safety Inv. Co. v. James*, 28 Ariz. 514, 237 P. 958 (1925), where the Supreme Court of Arizona, adopting the language of a California court, stated that a corporate veil can be pierced where "the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud *or promote injustice.*" (Emphasis supplied.) The Supreme Court of Arizona reaffirmed this test in *Home Builders & Suppliers v. Timberman*, 75 Ariz. 337, 256 P.2d 716, 721 (1953), and added:

> Before a court is entitled to disregard the corporate entity *there must be a resulting injustice* in addition to a situation that justifies a finding that the corporation is the alter ego of the individual.

(Emphasis supplied.)

*Accord, Honeywell, Inc. v. Arnold Constr. Co., Inc.*, 134 Ariz. 153, 654 P.2d 301, 307 (1982); *Youngren v. Rezzonico*, 25 Ariz. App. 304, 543 P.2d 142, 144 (1975); *Dietel v. Day*, 16 Ariz.App. 206, 492 P.2d 455, 457 (1972). *See also Employer's Liability Assurance Corp. v. Lunt*, 82 Ariz. 320, 313 P.2d 393, 395 (1957).

Here, Ward is not seeking to pierce the corporate veil to pursue individuals but is

using the alter ego theory to show that the identities of the parties had merged. Ware and Nash were a single entity and were incapable of forming a contract. The assignment of the note to Palo Verde was ineffective in conferring holder in due course status because there was nothing for them to purchase.

In summary, Nash executed a note with his company as a "straw man" and assigned it to Palo Verde for a much larger amount than he had actually invested in the property. The proceeds which did not go to the down payment went into the corporate savings account in which personal and corporate funds were commingled freely. No significant part of the additional money was reinvested in the property to upgrade Ward's security interest to a realistic level even though Nash was aware that his business was losing money. The amount of the assigned note was 90% of the value of the property, less the first mortgage, and was sure to edge out Ward's equity interest if Nash's business went under. Nash's scheme worked a grave injustice on Ward, who was aware only that a new loan was recorded prior to hers, but did not comprehend that her security interest would be rendered inconsequential thereby.

### III.

Assuming *arguendo* that the facade of regularity erected by Nash nevertheless sufficed to create a negotiable instrument, Palo Verde did not act in good faith. An assignee will be disqualified from holder in due course status if it accepts the commercial paper with sufficient notice to question its validity. A.R.S. § 47–3304(A)(1); A.R.S. § 47–3302(A)(3). A holder cannot avoid notice by refusing to investigate suspicious circumstances. *Stewart v. Thornton,* 116 Ariz. 107, 568 P.2d 414, 417 (1977). The Bankruptcy Court held that Palo Verde had no actual notice that Nash was commingling personal and corporate assets and that no Arizona case was cited establishing

a duty to investigate in a similar factual situation. Memo. Dec. at 16.

However, *Stewart v. Thornton, supra,* relied on by the court, did establish such a duty. The court held that a note purchased at discounted value was "sufficient to alert a prospective purchaser to a possible defense." 568 P.2d at 417. That court found an inference of bad faith in the failure to investigate.

The facts were clear that Palo Verde paid $16,344 for the $18,500 note and "did not inquire concerning the $18,500 debt between Nash and Ware Properties, although Schulman (its principal) knew Mr. and Mrs. Nash were Ware's only officers." Memo. Dec. at 8. Mr. Schulman had been involved with Nash or Ware during 1980 to 1982 in 25 to 30 prior collateralized transactions. In purchasing the discounted note, Palo Verde had actual knowledge of facts which should have put it on notice of possible irregularities. An inference of bad faith is appropriate in this situation and defeats Palo Verde's holder in due course status. Therefore, Palo Verde should be subject to the defenses of lack of consideration and lack of separate indentities.

This dissent is not intended to evaluate the bankruptcy court's findings as erroneous. It is concerned with the conclusions derived from the facts as established.

For the foregoing reasons I would reverse and remand for restoration of Mrs. Ward to the secured position second only to the first mortgage as contemplated by the original agreement.