492 P.2d 455

**Kenneth L. DIETEL, Appellant,**

v.

**James W. DAY and Margaret C. Day, husband and wife, Appellees.**

**No. 2 CA–CIV 1022.**

Court of Appeals of Arizona, Division 2.

Jan. 6, 1972.

Rehearing Denied Feb. 2, 1972.

Review Denied March 7, 1972.

Johnson, Darrow, Hayes & Morales, by Raymond F. Hayes, Tucson, for appellant.

R. Lamar Couser, Tucson, for appellees.

KRUCKER, Chief Judge.

This is an appeal by Kenneth L. Dietel (hereafter Dietel), a resident of the State of California, third-party defendant, of the Judgment rendered against him individually in favor of James W. Day and Margaret C. Day (hereafter Day or Days), third-party plaintiffs. The Judgment in question

ran against Dietel individually and against Filmlab, Inc., a California corporation of which he was a shareholder, director and subsequently, the president. The case was tried without a jury, before the Honorable Judge Laurance T. Wren, Judge of the Superior Court of Coconino County, sitting in Pima County. On March 18, 1971 Judge Wren filed fifty-four (54) findings of fact and twelve (12) conclusions of law as the basis for the Judgment of $9,900.00. The amount of the Judgment represents $8,700.00, as the amount paid by Day under the franchise agreement, and $1,200.00 as the out-of-pocket expenses and operating losses incurred by Mr. and Mrs. Day.

This case involves many parties and many individual defendants and includes a certified record of 99 items, numerous exhibits and three volumes of Abstract of Record. The action originated in a suit by Fotomat, Inc. of California against Filmlab, Inc., Kenneth Dietel, James Day and others for infringement of trade names, trademarks and unfair competition. Day, a franchisee of Filmlab, then filed a third-party complaint against Dietel, as the alter-ego of Filmlab, Inc., for breach of contract. The court found Dietel to be the alter ego of Filmlab, Inc. and awarded the Judgment holding Dietel personally liable.

The question presented to this court is whether the corporate veil was properly pierced to hold Dietel personally liable.

PIERCING THE CORPORATE VEIL

■ The law regarding corporate entity and the piercing of the corporate veil is more easily stated than applied. As a general rule, a corporation will be treated as a legal entity until sufficient reason appears to disregard the corporate form. The corporate fiction will be disregarded when the corporation is the alter ego or business conduit of a person, and when to observe the corporation would work an injustice. The alter-ego status is said to exist when there is such unity of interest and ownership that the separate personalities of the corporation and owners cease to exist.

Employer's Liability Assurance Corporation v. Lunt, 82 Ariz. 320, 313 P.2d 393 (1957); Cooper v. Industrial Commission, 74 Ariz. 351, 249 P.2d 142 (1952). See also, 18 Am.Jur.2d, Corporations §§ 13–16 (1965); and Fletcher, 1 Cyclopedia Corporations §§ 41.–41.3 (1963).

■ Where a corporation is operated and maintained for the purpose for which it was incorporated and *not* as a mere shield of the stockholders, the corporate form should *not* be disregarded. *Cooper,* supra. If a corporation was formed or is employed for fraudulent purposes then clearly the corporate fiction should be disregarded. And in Arizona it has been held that fraud may be the promise to do a future act with the present intent not to perform. Employer's Liability v. Lunt, supra. But it must be noted that a legitimate purpose of incorporation is to avoid personal liability and if the corporate fiction is too easily ignored and personal liability imposed, then incorporation is discouraged. Stock ownership by a few persons does not mean necessarily that corporation debts should be imposed upon them. If there is no unification of interests and intermingling of funds, so that the corporation loses its separate identity, then the owners should not be personally liable.

The Court of Appeals recently discussed the alter ego question in Ferrarell v. Robinson, 11 Ariz.App. 473, 465 P.2d 610 (1970):

"As previously stated, the mere fact that Kramer was an officer and the sole shareholder in R.I.C., Inc., does not in and of itself make this situation one in which the corporate form should be disregarded. Cooper v. Industrial Commission, 74 Ariz. 351, 249 P.2d 142 (1952). The evidence would have to show that the corporation was not only influenced and governed by defendant Kramer, but that there was also such a unity of interest and ownership that the individuality or separateness of defendant Kramer and the corporation had ceased to exist. Whipple v. Industrial Commission, 59

Ariz. 1, 121 P.2d 876 (1942): Home Builders & Suppliers v. Timberman, 75 Ariz. 337, 256 P.2d 716 (1953). A review of the record in this action has failed to disclose any basis for such a finding herein. There was no substantial evidence of intermingling of corporate and personal assets, affairs or funds, or that the corporate structure was in any way used for other than legitimate corporate purposes. Further, there would have to be a showing that observance of the corporate form would sanction a fraud. See Home Builders & Suppliers v. Timberman, *supra;* Phoenix Safety Investment Co. v. James, 28 Ariz. 514, 237 P. 958 (1925). While it is clear that plaintiffs did not receive the benefit of their bargain, that alone does not constitute any evidence of fraudulent conduct and it is not sufficient to justify the disregarding of the corporate entity." 11 Ariz.App. at 476, 465 P.2d at 613.

In the case *sub judice,* the trial court must have found the above-discussed factors to be present, since the judgment was awarded against Filmlab, Inc. and Dietel personally.

## APPELLATE REVIEW

The role of the appellate court in review is to determine if there is substantial evidence in support of the judgment. If reasonable men might differ as to whether certain evidence establishes a fact in issue, then such evidence must be considered substantial. State v. Bearden, 99 Ariz. 1, 405 P.2d 885 (1965); City of Phoenix v. Burke, 9 Ariz.App. 395, 452 P. 2d 722 (1969). On appeal this court must consider the evidence and possible inferences therefrom in a manner most favorable to upholding the judgment. State v. Harris, 9 Ariz.App. 288, 451 P.2d 646 (1969); Romney Produce Co. v. Edwards, 9 Ariz.App. 258, 451 P.2d 338 (1969). While the Court of Appeals is bound by the trial court's findings of fact, unless clearly erroneous, this doctrine does not apply to the trial court's conclusions of law and the Court of Appeals may draw its own legal conclusions from the facts. Zellerbach Paper Co. v. Valley National Bank, 13 Ariz.App. 431, 477 P.2d 550 (1970); Park Central Development Co. v. Roberts Dry Goods, Inc., 11 Ariz.App. 58, 461 P.2d 702 (1969). See, Rule 52, Rules of Civil Procedure, 16 A.R.S.

## FINDINGS OF FACT

First, we agree with the trial court's finding as a matter of law that Dietel was not guilty of fraud (Minute Entry dated January 11, 1971, Abs. of Record 335–336).

After examining the entire record, we find several of the trial court's findings of fact to be *clearly erroneous* and others to be irrelevant to the Judgment holding Dietel personally liable as the alter-ego of Filmlab, Inc. And after viewing the entire record and the trial court's findings of fact which are not clearly erroneous, we are unable to reach the legal conclusion that Dietel was guilty of anything which should make him personally liable.

Finding No. 8 by the trial court is clearly erroneous and is contradictory to the first part of Finding No. 52 (Franchise Agreement Exhibit N, Abs. of Record 411):

"8. That PARKER signed said Franchise Agreement under circumstances wherein it is unclear in what capacity he signed."

"52. On the Franchise Agreement, WILLIAM PARKER signed as Secretary-Treasurer; there was no corporate seal attached nor did any other officer sign."

Finding No. 11 is clearly erroneous in part:

"11. Prior to the execution of said Franchise Agreement, KENNETH L. DIETEL was the major stockholder in FILMLAB, INC., its principal officer, and owned the corporate business location next door to his lumberyard in Pomona, California."

The Franchise Agreement was signed on June 14, 1968 and no stock was issued until September 4, 1968, and prior to September

4, 1968 the corporation officers were: Thomas Carnes, president; Kenneth Dietel, vice-president; William Parker, secretary-treasurer.

Findings No. 25 and 27 suggest that Dietel used a personal pronoun with reference to the cross-claim by Day against Filmlab, Inc. Even if true, we think it not unusual that Dietel, as President of Filmlab, Inc., at this time, might use the personal pronoun in this manner. We cannot conclude from the use of this language that the corporation had ceased to exist as a separate entity.

"25. After the filing of said Cross-Claim, but prior to the filing of the said Third-Party Complaint, KENNETH L. DIETEL called JAMES W. DAY from California and asked: 'What are you doing to *me*? Why are you suing *me*?'" (Emphasis supplied by the trial court)

\* \* \* \* \* \*

"27. During said telephone conversation, KENNETH L. DIETEL said that he had only received FIVE THOUSAND ($5,000.00) DOLLARS of the EIGHTY-SEVEN HUNDRED ($8,700.-00) DOLLARS paid by JAMES W. DAY."

Finding No. 30:

"30. That neither the Franchise Agreement nor the Sublease Agreement were executed by FILMLAB, INC. in the usual manner of attestation by the Secretary and affixation of a corporation seal."

at best seems irrelevant since we find no requirement anywhere that the Secretary must attest and affix the corporate seal and we are unclear to whom the "usual manner" language refers.

Findings No. 37 and 38 are that Dietel "in his personal capacity" settled the California litigation and the within lawsuit with Fotomat Corporation. He did sign both as an individual and in his capacity as president of Filmlab, Inc., but again we are not able to conclude from this that the corporation has ceased to exist and the

corporation's liability should become Dietel's personally.

Finding No. 43 is incorrect since at the time Day began negotiations for a franchise (May, 1968) Dietel was vice-president and his son Kurt held no office in the corporation and they did not become president and vice-president until September 4, 1968.

"43. That during the operative facts herein, KENNETH L. DIETEL was President of FILMLAB, INC. and his son, KURT DIETEL, became Vice-President."

Finding No. 48 appears to be clearly erroneous since the $1,000.00 was paid to Fotomat Corporation with a Filmlab, Inc. check.

"48. In settling the case in California, KENNETH L. DIETEL did personally pay ONE THOUSAND ($1,-000.00) DOLLARS to FOTOMAT CORPORATION as and for stipulated damages."

And we find no evidence anywhere in the record to support Finding No. 49 that Dietel sold Filmlab, Inc.

"49. That, after the negotiations with Mr. and Mrs. Day and the execution of the Franchise Agreement and Sublease Agreement, KENNETH L. DIETEL sold the corporation which he owned known as FILMLAB, INC."

## CONCLUSIONS OF LAW

From the Findings of Fact and the record before us, we can only conclude that Filmlab, Inc. was guilty of numerous breaches of the franchise contract with the Days and for that reason the Judgment against Filmlab, Inc. should stand. However, we are unable to find evidence of fraud, or mingling of funds or unity of interests of Dietel and Filmlab, Inc. such as to justify holding Dietel personally liable.

We therefore reverse the judgment as applied to Kenneth Dietel personally.

HOWARD, and HATHAWAY, JJ., concur.