**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                                  )   BAP No. AZ-14-1511-PaJuKi
                                        )          AZ-14-1514-PaJuKi
DUSTIN ROGER CHANTEL and ELIZABETH )        (related appeals)[1]
DARLENE CHANTEL,                        )
                                        )   Bankr. No. 13-11909
                Debtors.                )
_____)   Adv. Proc. 13-00977
                                        )              14-00041
DUSTIN ROGER CHANTEL; ELIZABETH         )
DARLENE CHANTEL,                        )
                                        )
                Appellants,             )
                                        )
v.                                      )   **M E M O R A N D U M**[2]
                                        )
WILLIAM PIERCE, Chapter 7 Trustee; )
UNITED STATES TRUSTEE,                  )
                                        )
                Appellees.              )
_____)

Submitted Without Oral Argument[3]
on June 19, 2015

Filed - July 1, 2015

Appeal from the United States Bankruptcy Court
for the District of Arizona

Hon. Eddward P. Ballinger, Jr., Bankruptcy Judge, Presiding

---

[1]  Although the parties have separately briefed the two appeals, the Panel elects to treat them as related appeals in this Memorandum.

[2]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[3]  After reviewing the briefs and submissions of the parties, pursuant to Fed. R. Bankr. P. 8019, in separate orders entered on April 30, 2015, the Panel determined that oral argument was not required in these appeals.

-1-

Appearances: Dustin Roger Chantel pro se on brief; Ramona D. Elliott, P. Matthew Sutko, John Postulka, Ilene J. Lashinsky, Elizabeth C. Amorosi, and Christopher J. Pattock on brief for appellee United States Trustee; Terry A. Dake on brief for appellee William E. Pierce, chapter 7 trustee.

---

Before: PAPPAS, JURY, and KIRSCHER, Bankruptcy Judges.

Chapter 7[4] debtors Dustin Roger Chantel ("Dustin") and Elizabeth Darlene Chantel ("Elizabeth"[5] and, together, "Debtors") appeal two judgments of the bankruptcy court entered in related adversary proceedings: (1) determining that all of the real and personal property held by an entity known as the Chan-Lan Trust (the "Trust") was property of the bankruptcy estate, and directing Debtors to turn over that property to the chapter 7 trustee, William E. Pierce ("Pierce"); and (2) denying their discharge under § 727 (a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), and (a)(4)(D). We AFFIRM the bankruptcy court's judgment determining that the Trust's assets are property of the estate and directing Debtors to turn them over to Pierce. We AFFIRM that portion of the bankruptcy court's judgment denying discharge under § 727(a)(2)(A), (a)(2)(B), and (a)(4), but we REVERSE that portion of the judgment denying Debtors' discharge under § 727(a)(3) and (a)(4)(D).

---

[4] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

[5] We refer to Debtors by first name for clarity; no disrespect is intended.

-2-

# I.  FACTS

Dustin is retired; Elizabeth, his spouse, is a housewife.

The disputes in this appeal focus on the Trust, a California trust created by Dustin and Elizabeth in 1995.  In the initial trust documents, Donna Aguirre was identified as the settlor of the Trust,[6] and Dustin was the trustee.  Elizabeth became a co-trustee in 1997.

Debtors became embroiled in litigation with their electricity supplier, Mohave Electric Cooperative ("Mohave").  Mohave had erected power lines on Debtors' property in Kingman, Arizona (the "Property") on an easement granted decades before Debtors acquired the land.  Later, Debtors constructed what they described as a "divinely inspired structure" directly beneath the power lines.  Mohave County issued a stop-work order to Debtors during construction of the structure; Debtors ignored the order.  On September 12, 2008, the county instructed Mohave to de-energize the overhead lines because the structure had created an unsafe condition.  As a result, Debtors lost their source of electric power on the Property.

In 2009, Debtors sued Mohave for complying with the county's instructions in state court.  Mohave asserted a counterclaim against Debtors, and the state court entered a money judgment of $175,000 against Debtors on Mohave's counterclaim.  Debtors appealed, but the judgment was affirmed by the Arizona Court of Appeals.  Chantel v. Mohave Elec. Co-op, 2013 WL 1628308 (Ariz.

---

[6] Ms. Aguirre's identity or whereabouts is not provided by the parties.  She resigned as settlor of the Trust on the day it was created.  She did not contribute any property to the Trust.

Ct. App. Apr. 16, 2013). No further appeal was taken.

Debtors filed a petition for relief under chapter 13 on July 11, 2013, which the court dismissed due to Debtors' failure to timely file a chapter 13 plan. The court then granted Debtors' motion to reinstate the case but converted it to a chapter 7 case on August 12, 2013. Pierce was appointed to serve as chapter 7 trustee.

Debtors' schedules indicated that they owned no real property and had not transferred any property to a self-settled trust in the previous ten years. The only reference to the Trust was in schedule G in which Debtors claimed they leased farmland from the Trust. Debtors listed their monthly income as $2,039, comprised solely of pension, social security benefits, and disability benefits. There is no declaration in their schedules about the income of, nor any compensation Debtors may receive from, the Trust.[7]

On August 27, 2013, Pierce commenced an adversary proceeding against Debtors in their personal capacities and as trustees of the Trust. Pierce sought a judgment denying Debtors' discharge under § 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), and (a)(4)(D) alleging that Debtors had: failed to properly disclose their interests in the Trust; failed to provide records concerning the Trust; transferred assets of the Trust during the bankruptcy case without court approval; and knowingly, wilfully, and fraudulently hindered, delayed, and defrauded their creditors and the trustee.

---

[7] Although Debtors did not list any real property in their schedules, they did list a mortgage of approximately $163,000. Their schedule F also acknowledges a debt of $175,000 to Mohave based upon the state court judgment.

-4-

Pierce also sought a judgment from the bankruptcy court determining that all of the real and personal property of the Trust was property of the bankruptcy estate pursuant to § 541 and directing that Debtors turn over all of the property to Pierce pursuant to § 542.

On January 16, 2014, the United States Trustee (the "UST") commenced an adversary proceeding against Debtors. It also requested that the bankruptcy court deny Debtors' discharge under § 727(a)(2), (a)(3), and (a)(4). The UST alleged that the Trust was a sham, that Debtors were the beneficial owners of the Trust's assets, and that Debtors had transferred, removed, and concealed property of the Trust with the intent to hinder, delay, and defraud their creditors. The UST further alleged that Debtors had failed to keep, or had concealed, records, and that they knowingly, and with fraudulent intent, made false statements under oath concerning material information by failing to disclose their interest in the Trust in their schedules.

At the request of the UST and Pierce, the bankruptcy court ordered that both adversary proceedings be tried at the same time.[8] The trial occurred on July 31 and August 8, 2014. Pierce and the UST were represented by counsel; Debtors appeared pro se. At the beginning of trial, both Pierce and the UST informed the bankruptcy court that they no longer sought a denial of Debtors' discharge for their failure to produce books and records.

Dustin and Elizabeth testified at the trial. Dustin made

_____

[8] Before trial commenced, Dustin, as trustee of the Trust, filed a motion to dismiss the case. The bankruptcy court denied the motion because Dustin was not an attorney, and only attorneys may represent the Trust in federal court.

-5-

several important admissions and other statements during his testimony. Among them, he testified that in the years preceding creation of the Trust a group of people whom he could not identify had approached him about creating a trust; they then gratuitously gave him two parcels of real estate to create the Trust. Dustin later claimed that he had traded services in exchange for the two parcels. Dustin testified that Debtors owned no real property, and later he testified that Debtors had transferred numerous parcels of real property and items of personal property to the Trust, including the Property. Dustin admitted that Debtors had declared income from property ostensibly owned by the Trust on their personal income tax returns. He also admitted that Debtors had used the Property allegedly owned by the Trust as collateral for loans made to Debtors, including the mortgage loan, and then had deducted the mortgage loan interest on their personal income taxes. Dustin admitted that the Trust's funds were used to pay Debtors' personal cable bill, cell phone bill, dental expenses, gas and propane bills, car loan payments (for cars titled in Debtors' names), car registration, credit card bills, and other personal expenses. Dustin was unable to identify any distributions to beneficiaries made by the Trust except for loans. Dustin also testified that, after Debtors filed their bankruptcy petition, Dustin sold silver bullion, which had been purchased with Trust funds, to unnamed parties, and then lost the $110,000 in sale proceeds gambling in Nevada.[9]

---

[9] Dustin ignored the bankruptcy court's advice that he consider invoking the Fifth Amendment because of the potential
(continued...)

In her testimony, Elizabeth confirmed several aspects of Dustin's testimony, while adding other details. She insisted that the information Debtors listed in the bankruptcy schedules was correct. She acknowledged that Debtors had transferred their assets to the Trust, including a $90,000 cash inheritance she received, which Debtors then used to make improvements to the Property. She recounted how Debtors had purchased jewelry with Trust funds, which was stored in Elizabeth's jewelry box and worn by her.

At the close of trial, the bankruptcy court took the matter under advisement. On October 15, 2014, the court announced its oral findings, conclusions, and decision. Highlights of the court's decision included that:

- Debtors were the settlors, trustees, and beneficiaries of the Trust because Debtors supplied all of the assets contributed to the Trust without consideration, and without relinquishing enjoyment, dominion, and control over those assets.

- Debtors used Trust assets regularly to pay personal expenses.

- The $110,000 in Trust assets (i.e., the silver bullion sale proceeds) gambled away by Dustin, and the jewelry purchased for Elizabeth, were prominent examples of why, in the court's words, "[t]he Trust was nothing more than Debtors' personal asset repository." Hr'g Tr. 9:10-11, Oct. 15, 2014.

- Debtors had unlimited power over the Trust, including the

---

[9](...continued)
criminal implications of his testimony.

-7-

power to amend the Trust.

- The Trust documents did not require any distributions to be made to its beneficiaries, and no distributions other than loans to be repaid were in fact made.

- Debtors "maintained all the beneficial ownership of the Trust assets." Hr'g Tr. 11:6-9, Oct. 15, 2014.

- "The trial evidence, including [among] other things, the Court's evaluation of witness credibility clearly established that the Debtors withheld, concealed their assets, and provided false information to the Trustees with the intent to hinder, delay, and defraud their creditors, the estate Trustee, and the U.S. Trustee." Hr'g Tr. 15:5-15, Oct. 15, 2014.

- Debtors knowingly and fraudulently signed the bankruptcy schedules in which they failed to disclose Trust assets and personal income earned by the sale of Trust property.

- Debtors' failure to disclose the assets and transfers to the Trust constituted false oaths.

The bankruptcy court entered separate judgments in the two adversary proceedings on November 11, 2014. In the judgment in Pierce's adversary proceeding, the court denied Debtors' discharge under § 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), and (a)(4)(D). It also determined that all of the assets of the Trust were property of the Debtors' bankruptcy estate under § 541 which must be turned over to Pierce pursuant to § 542. In the UST's adversary proceeding, the court denied "discharge of all of Debtors' debts and claims which are listed in the Schedules . . .

-8-

or could have been included in the Schedules."[10]

Dustin and Elizabeth filed timely appeals of both judgments.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(E) and (J). We have jurisdiction under 28 U.S.C. § 158.

Although their argument is difficult to decipher, Debtors appear to challenge the jurisdiction of the bankruptcy court and this Panel to adjudicate the issues raised in these proceedings because, they allege, there are "non-core" issues implicated here. Debtors seem to argue that the judgments purport to adjudicate their dispute with Mohave, thereby presenting non-core contract law issues, which the bankruptcy court and this Panel may not constitutionally decide. See N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982); Stern v. Marshall, 564 U.S. 2 (2011). For the following reasons, we reject Debtors' attempted jurisdictional challenge.

First, no non-core claims were asserted in the adversary proceedings. Pierce and the UST sought a judgment denying Debtors' discharge under § 727(a), a classic core proceeding per 28 U.S.C. § 157(b)(2)(J).[11] In addition, Pierce sought an order

_____

[10] The judgment in the UST action did not reference any specific provisions of § 727(a) upon which the Court determined Debtors' discharge should be denied. However, the judgment does reference the oral ruling of October 15, 2014, during which the bankruptcy court determined Debtors' discharge should be denied under § 727(a)(2)(A), (a)(2)(B), and (a)(4)(A).

[11] A claim for denial of the debtor's bankruptcy discharge is a "public rights" controversy, involving only the Debtors and the bankruptcy estate, which the bankruptcy court may constitutionally
(continued...)

-9-

requiring Debtors to turn over what the bankruptcy court determined to be property of the estate, another core proceeding. See 28 U.S.C. § 157(b)(2)(E). Marathon and Stern address constitutional questions regarding the bankruptcy court's authority to adjudicate claims between the bankruptcy estate and third parties other than the debtors. Here, the only parties involved were Debtors, Pierce, and the UST. Because there were no third parties involved in these proceedings, the principles discussed in those decisions are of no consequence.

Secondly, while they suggest otherwise, Debtors' claims involving Mohave were not at issue in the adversary proceedings, and Mohave has not asserted any claims against the assets of the Trust. Indeed, there is a separate adversary proceeding pending in the bankruptcy court where the dispute between Mohave and Debtors will be heard. Adv. 13-01267.[12]

In sum, Debtors' ill-defined jurisdictional arguments lack merit.

### III.  ISSUES

Whether the bankruptcy court erred in determining that all of the real and personal property in the Trust was property of the estate and directing the turnover of that property to Pierce.

Whether the bankruptcy court erred in denying Debtors'

---

[11](...continued)
adjudicate. Deitz v. Ford (In re Deitz), 760 F.3d 1038, 1039 (9th Cir. 2014).

[12]  In their adversary proceeding, Mohave seeks an exception to discharge under § 523(a)(6) for their Superior Court judgment of $175,407.04, plus attorneys' fees and costs. We express no opinion on the impact this decision has on that adversary proceeding.

-10-

discharge.

## IV. STANDARDS OF REVIEW

Whether property is included in a bankruptcy estate, and the procedures for recovering estate property, are questions of law that we review de novo. White v. Brown (In re White), 389 B.R. 693, 698 (9th Cir. BAP 2008). The court's factual findings are reviewed for clear error. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

We review a bankruptcy court's decision resolving an objection to discharge as follows:

> "(1) the bankruptcy court's determinations of the historical facts are reviewed for clear error; (2) the selection of the applicable legal rules under § 727 is reviewed de novo; and (3) the application of the facts to those rules requiring the exercise of judgments about values animating the rules is reviewed de novo."

In re Retz, 606 F.3d at 1196 (quoting Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004), aff'd, 212 F. App'x 589 (9th Cir. 2006)).

The bankruptcy court's determinations concerning the debtor's intent are factual matters reviewed for clear error. Beauchamp v. Hoose (In re Beauchamp), 236 B.R. 727, 729 (9th Cir. BAP 1999). A factual finding is clearly erroneous if it is "illogical, implausible, or without support in the record." In re Retz, 606 F.3d at 1196 (citing United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc)).

## V. DISCUSSION

Debtors' essential argument, both in the bankruptcy court and in these appeals, is that they owned none of the Trust property.

-11-

Because all of the property at issue was the Trust's property, Debtors insist that they committed no concealment or false oath in failing to disclose relevant facts about the property in their schedules, nor did they engage in any wrongdoing in transferring property of the Trust both pre- and post-petition.

We agree with the bankruptcy court that the property held by the Trust was property of the estate which must be turned over to Pierce and, with the two exceptions regarding Debtors' obligations to keep records discussed below, we agree with the bankruptcy court that Debtors' discharge was properly denied under § 727(a).

**I.**

**The bankruptcy court did not err in determining that all assets of the Trust were property of the estate and directing turnover of those assets to the chapter 7 trustee.**

Under § 541(a)(1), property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." This expansive language is not ambiguous – all means all. But even assuming the statute is ambiguous, this provision has been consistently interpreted by the courts to have the broadest possible scope. United States v. Whiting Pools, 462 U.S. 198, 204 (1983) (noting that "Congress intended a broad range of property to be included in the estate . . . . The statutory language reflects this scope of the estate . . . . The house and senate reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad."); accord Cusano v. Klein, 264 F.3d 936, 945 (9th Cir. 2001).

Although the term "property of the estate" is to be construed broadly, the Bankruptcy Code does limit its reach. For example, § 541(b)(1) provides that: "Property of the estate does not

-12-

include — 1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor." Under this provision, a debtor who is a trustee of a private or business trust ordinarily exercises its "power" on behalf of the trust and thus "solely for the benefit of an entity other than the debtor." However, there is an important exception to this rule: when a debtor is both the trustee and beneficiary of a trust. Torts Claimants Comm. v. Roman Catholic Archbishop in Or. (In re Roman Catholic Archbishop of Or.), 345 B.R. 686, 707 (Bankr. D. Or. 2006).

### A. The Trust was the alter ego of Debtors and its assets were property of the estate.

In bankruptcy, an alter ego is a nominal third party that has no substantive existence separate from the debtor, and property purportedly held by that third party is, therefore, the debtor's own property. Int'l Fin. Servs. Corp. v. Chromas Techs. Can., Inc., 356 F.3d 731, 734, 736-737, 740 (7th Cir. 2004); In re Pisculli, 426 B.R. 52, 61 (Bankr. E.D.N.Y. 2010) (assets of an alter ego of debtor at the time of filing the bankruptcy petition are property of the estate).

Alter ego theory is usually used to reach assets nominally held by a corporation. Dietel v. Day, 492 P.2d 455, 457 (Ariz. Ct. App. 1972). However, Arizona law allows the same theory to reach assets of a trust because "the underlying principle is the sham nature of the arrangement." Id.; United States v. Hart, 2006 WL 3377626, at *3 (D. Ariz. Oct. 19, 2006); see also Neely v. United States, 775 F.2d 1092, 1094 (9th Cir. 1985) (alter ego theory may be applied to sham trusts under federal law).

-13-

A trust is an individual's alter ego when there is a unity of interest and ownership between the trust and the individual, such that observing the trust form would work an injustice. Dietel, 492 P.2d at 457; Ize Nantan Bagowa, Ltd. v. Scalia, 577 P.2d 725, 728 (Ariz. Ct. App. 1978). Under Arizona law, a court may find that a trust is an alter ego where (1) the individual treats the trust property as his own; (2) the trust paid minimal or no consideration for the property; (3) the individual has expressed the intent to shelter assets via the trust mechanism; (4) the individual maintains active or substantial control over the operations and decisions of the trust; and (5) a family or close relationship exists between the individual and the holding entity. Hart, 2006 WL 3377626, at *3 (citing Deutsche Credit Corp. v. Case Power & Equip. Co., 876 P.2d 1190, 1195-96 (Ariz. Ct. App. 1994)).

Here, the bankruptcy court made clear findings concerning each of these requirements. Because its decision was based on competent evidence, it could properly conclude that there was a near perfect unity of interest between the Trust and Debtors, and thus, that the Trust was the alter ego of Debtors and its assets were property of the bankruptcy estate.

1. Debtors treated trust property as their own. The bankruptcy court heard the testimony of both Debtors and was given voluminous documentary exhibits detailing each asset of the Trust. Among its findings from this evidence, it determined that Debtors had used the Trust "to pay Debtors' home loan as well as expenses personally related to utilities, gas for vehicles, tires, car payments, personal eyeglasses, dental work, credit card bills, propane gas purchases, cable television and cell phones." Hr'g

-14-

Tr. 7:11-17, Oct. 15, 2014. The court concluded that "the evidence clearly established the Trust served as the Debtors' de facto checking account, or personal account, I should say." Id. at 7:22-23. The court further found that, although Debtors claimed to have repaid the Trust for some of these expenses, their testimony "lacked credibility" and any payments made were "de minimis in relation to the benefits provided." Id. at 7:19-21.

Here, there was ample evidence offered to support the bankruptcy court's conclusion that Debtors treated the Trust's assets as their own. In addition, we must give substantial deference to the bankruptcy court's findings because they were based in part on credibility determinations concerning witness testimony. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985); Rosenbaum v. City & Cnty. of San Francisco, 484 F.3d 1142, 1163 (9th Cir. 2007) (the "trial court's credibility findings are subject to clear error and deserve special deference").

2. The Trust paid no consideration for the properties, which were all provided by Debtors. As noted, the court was given documentary evidence about the assets contributed to and owned by the Trust. It found that all assets of the Trust had been contributed by Debtors, and that "Debtors' transfers of property and money to the trust were made without receiving adequate consideration[.]" Hr'g Tr. 7:6-8, Oct. 15, 2014. Debtors have not effectively challenged the court's findings in this respect.

3. Debtors intended to shelter assets via the trust mechanism. Based on the documentary evidence, and because the Debtors lacked credibility, the bankruptcy court found that

-15-

Debtors intended to shelter assets: "By transferring nominal ownership of their valuable assets to the trust, the Debtors sought to and intended to hinder, delay, or defraud their creditors." Hr'g Tr. 11:10-15, Oct. 15, 2014. The record adequately supports this finding, and it was not clearly erroneous.

4. <u>Debtors maintained active or substantial control over the operations and decisions of the Trust.</u> The bankruptcy court made explicit fact findings on this point: "Throughout its histories, Debtors have exercised exclusive dominion and control over trust assets[.]" Hr'g Tr. 7:11-12, Oct. 15, 2014. "For all relevant times since the inception of the Trust, one or both of the Debtors executed documents and instruments and acted as sole trustees of the Trust." Id. at 6:17-20. The bankruptcy court's findings are supported in the record and were not clearly erroneous.

5. <u>A family or close relationship exists between the Debtors and the Trust.</u> It is undisputed that Debtors, at all relevant times, served as the trustees of the Trust. The one exception to this condition occurred in 1997, when Debtors' stepson/son Brian Lankford was a trustee. However, there is no indication in the record that anyone outside the Debtors' family ever participated in the management of the Trust, nor have Debtors suggested otherwise.

As can be seen, the bankruptcy court made appropriate and adequate fact findings as to each of the five elements under the Arizona case law to show that the Trust was the alter ego of the Debtors at the time of filing the bankruptcy petition (and

-16-

thereafter). The bankruptcy court could therefore properly conclude that the Trust's assets were actually the Debtors' property. Chromas Techs. Can., Inc., 356 F.3d at 740. As a result, those assets became property of the estate when Debtors filed their bankruptcy petition. § 541(a); In re Pisculli, 426 B.R. at 61.

**B.    The bankruptcy court did not err in directing the turnover of the assets of the Trust.**

A bankruptcy court may order the turnover of property to the debtor's estate if it is property of the estate. See § 542(a) (requiring turnover of property of the estate to the trustee unless such property is of inconsequential value or benefit to the estate.) To prevail in a turnover action under § 542(a), a trustee must establish: (1) that property of the estate is or was in the possession, custody, or control of an entity during the pendency of the case; (2) that the property may be used by the trustee under § 363; and (3) that the property has more than inconsequential value or benefit to the estate. See § 542(a); Bailey v. Suhar (In re Bailey), 380 B.R. 486, 492 (6th Cir. BAP 2008); Zazali v. Minert (In re DBSI, Inc.), 468 B.R. 664, 669 (Bankr. D. Del. 2011); 5 COLLIER ON BANKRUPTCY ¶ 542.02[2] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.).

As discussed in the previous section, the bankruptcy court properly concluded that all assets of the Trust were property of the estate and that "at all relevant times, Debtors have exercised exclusive dominion and control over trust assets[.]" Hr'g Tr. 7:11-12, Oct. 15, 2014. While the bankruptcy court did not attempt to value all of the assets of the Trust, the record before

-17-

the court included in its list of assets numerous parcels of real estate, and other real estate contracts valued at over $175,000. The only indication in the record of liens was a mortgage on the principal residence. Among the personal property assets, the silver bullion testified to by Dustin had significant value, and Elizabeth testified that the jewelry was "valuable." Thus, we are confident that the Trust assets had a value of consequence, and that their liquidation would confer a significant benefit to the creditors of the estate.

Because the Trust assets had significant value and were property of the estate in the possession, custody, and control of Debtors, the bankruptcy court did not err in ordering the turnover of the Trust assets.

**II.**

**The bankruptcy court did not err in denying Debtors' discharge.**

**A. The court did not err in denying Debtors' discharge under § 727(a)(2)(A) and (a)(2)(B).**

Section 727(a)(2) provides that:

> The court shall grant the debtor a discharge, unless . . . the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed[,] (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of filing the petition[.]

Under § 727(a)(2), a party objecting to a debtor's discharge must prove the following elements by a preponderance of the evidence:

-18-

"'(1) disposition of property, such as a transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay, or defraud a creditor through the act of disposing of the property.'" In re Retz, 606 F.3d at 1200 (quoting Hughes v. Lawson (In re Lawson), 122 F.3d 1237, 1240 (9th Cir. 1997)). The intent of a debtor in making a transfer or concealment of property is a question of fact that "may be established by circumstantial evidence, or by inferences drawn from a course of conduct." Devers v. Bank of Sheridan (In re Devers), 759 F.2d 751, 753-54 (9th Cir. 1985); see also Adeeb v. Adeeb (In re Adeeb), 787 F.2d 1339, 1342 (9th Cir. 1986).

In this case, after a two-day trial where the bankruptcy court heard testimony from Debtors and received substantial documentary evidence concerning the assets of the Trust, the court found the Trust was "a mere conduit for Debtors' personal activities and all of the assets contributed [to it] constituted property of the Debtors before the bankruptcy filing." Hr'g Tr. 11:7-9, Oct. 15, 2014. Further, the court determined that Debtors had concealed, and failed to properly disclose, "more than $110,000 of liquid assets [of the Trust] consisting of quantities of silver bullion purchased just prior to and subsequent to Debtors' petition date." Id. at 8:25-9:3. The court also found that Debtors concealed the Property in the Trust, even though in 2013, and for some time prior, Debtors claimed to own the Property as their personal residence and had pledged it as collateral for loans. The court found "[a]t the time of their [petition] filing, Debtors had nominally divested themselves of title to . . . most if not all of their valuable assets by transferring these to [the

-19-

Trust] in exchange for no or de minimis consideration." Id. at 9:17-20. Further, the court determined, "[b]y transferring nominal ownership of their valuable assets to the [T]rust, the Debtors sought to and intended to hinder, delay, or defraud their creditors. Notwithstanding the nominal transfer of the assets during the one year period of filing for bankruptcy, the Debtors maintained all the beneficial ownership of [T]rust assets." Id. at 11:10-15.

The bankruptcy court did not err in finding that Debtors concealed and transferred their property both pre- and post-petition. First, we agree with the bankruptcy court that the evidence in the record established Debtors' prepetition concealment and transfers of property within one year prior to the bankruptcy petition. The evidence also shows that Debtors concealed and transferred property of the estate after they filed their bankruptcy petition. Given the evidence presented at trial regarding the concealment and transfer of property by the Debtors both pre- and post-petition, the bankruptcy court's finding that Debtors intended to hinder, delay, or defraud their creditors by completing these actions was also not illogical, implausible, or without support in the record.

The bankruptcy court did not err in denying Debtors' discharge under § 727(a)(2)(A) and (a)(2)(B).

**B.    The bankruptcy court did not err in denying discharge under § 727(a)(4)(A).**

Section 727(a)(4)(A) provides: "[t]he court shall grant the debtor a discharge, unless — . . . (4) the debtor knowingly and fraudulently, in or in connection with the case — (A) made a false

-20-

oath or account." The party objecting to a debtor's discharge under this provision must prove, by a preponderance of the evidence, "'(1) that the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently.'" In re Retz, 606 F.3d at 1197 (quoting Roberts v. Erhard (In re Roberts), 331 B.R. 876, 882 (9th Cir. BAP 2005)). Intent is a finding of fact that is usually proven by circumstantial evidence or by inferences drawn from the debtor's conduct. In re Retz, 606 F.3d at 1199 (citing In re Devers, 759 F.2d at 753-54).

Here, the bankruptcy court found Debtors failed to disclose numerous parcels of real property they owned, including the Property, which they used as their residence. The court also found Debtors failed to disclose in their schedules several bank accounts they owned. Moreover, the court found Debtors omitted the silver bullion from their schedules, as well as the jewelry. These findings of fact are supported by the record, and based upon them, the bankruptcy court did not err in concluding that Debtors made false oaths and omissions as to material facts in their bankruptcy case by failing to list these assets in their schedules.

The bankruptcy court also did not clearly err when it found that Debtors acted knowingly because they deliberately omitted assets from their schedules with knowledge of the fact that they were incomplete. See Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 173 (9th Cir. BAP 2007) ("A debtor 'acts knowingly if he . . . acts deliberately and consciously.'")

-21-

(quoting In re Roberts), 331 B.R. at 883); see also In re Retz, 606 F.3d at 1198 (holding that a debtor acts knowingly if he or she deliberately and consciously signed the schedules and Statement of Financial Affairs knowing they were incomplete).

Finally, the bankruptcy court properly found, as it did under § 727(a)(2)(A) and (a)(2)(B), that Debtor acted fraudulently in concealing and omitting assets in their schedules because they did so with the intent to deceive their creditors and the bankruptcy trustee.

Because the bankruptcy court's findings were not clearly erroneous, and because all the requirements of the statute are met, we conclude that the bankruptcy court did not err in denying the Debtors' discharge under § 727(a)(4)(A).

**C. The bankruptcy court erred in denying discharge under § 727(a)(3) and (a)(4)(D).**

Under § 727(a)(3), a discharge must be denied if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." This statute ensures that discharge is dependent on a debtor's true presentation of his financial affairs. Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva), 550 F.3d 755, 761 (9th Cir. 2008).

Similarly, § 727(a)(4)(D) provides for denial of discharge if "the debtor knowingly and fraudulently, in or in connection with the case —  . . . (D) withheld from an officer of the estate

-22-

entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs[.]"

We conclude the bankruptcy court, perhaps inadvertently, erred when it denied Debtors' discharge under § 727(a)(3) and (a)(4)(D). Recall, both the UST and Pierce withdrew their claims under § 727(a)(3) at the beginning of trial. And neither party presented any evidence regarding Debtors' records under either provision of § 727(a). The bankruptcy court also made no findings regarding the appropriateness of Debtors' books and records or whether they were withheld from an officer of the estate.

We, therefore, REVERSE that portion the bankruptcy court's judgment denying Debtors' discharge under § 727(a)(3) and (a)(4)(D).

## VI.  CONCLUSION

We AFFIRM the court's judgment determining that the assets of the Trust are property of the estate and directing the turnover of those assets to Pierce. We AFFIRM the bankruptcy court's judgments denying Debtors' discharge under § 727(a)(2)(A), (a)(2)(B), and (a)(4)(A). Finally, we REVERSE the bankruptcy court's judgment denying Debtors' discharge under § 727(a)(3) and (a)(4)(D).