NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MICHAEL BARBANO, *Plaintiff/Appellant*,

*v.*

WALTER L. BROWN, JR., et al., *Defendants/Appellee*s.

No. 1 CA-CV 23-0091

Appeal from the Superior Court in Maricopa County
No.  CV2020-051724
The Honorable Alison Bachus, Judge (*Retired*)

**AFFIRMED**

COUNSEL

Klauer & Curdie, Phoenix
By Brandon R. Curdie, Richard L. Klauer
*Counsel for Plaintiff/Appellant*

Fletcher Barnes Law PLC, Phoenix
By Don C. Fletcher, Timothy H. Barnes, Sheryl L. Andrew
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Vice Chief Judge Randall M. Howe and Judge Jennifer M. Perkins joined.

---

**K I L E Y**, Judge:

¶1        After Michael Barbano entrusted his 1963 Chevrolet Impala to Brown's Classic Autos LLC ("Classic") to sell on consignment, the car was stolen, and he never saw it again. When Barbano sued Classic for the loss of his car, he also brought claims against its sole member and owner Walter Brown Jr. and his spouse Ruth Rassel (collectively, the "Browns") on an "alter ego" theory of liability.

¶2        The superior court granted summary judgment in favor of the Browns, and Barbano now appeals. Because the court did not err in determining that Barbano failed to come forward with evidence sufficient to withstand summary judgment on his alter ego claims, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶3        In June 2019, Barbano entered into a consignment agreement under which, in exchange for a fee, Classic would market and sell his Impala for $60,000. Sales representative Dustin Nickless represented Classic in the consignment transaction.

¶4        Viewed in the light most favorable to Barbano as "the party against whom summary judgment was granted," *see Doe v. Roman Cath. Church of Diocese of Phx.*, 255 Ariz. 483, 486, ¶ 2 (App. 2023), the evidence shows that in August 2019, Classic terminated Nickless and directed him to remove the consigned vehicles he was marketing, including the Impala, from Classic's lot. Nickless later testified that when he arrived at Classic to remove the vehicles, "the Impala was gone." Nickless called Barbano to tell him that his Impala was missing, and Barbano called the police and reported it stolen. The car was never recovered.

¶5        In February 2020, Barbano sued Classic and the Browns for conversion, breach of contract, and breach of the covenant of good faith and fair dealing, later adding claims for promissory estoppel, unjust enrichment, fraudulent misrepresentation, and consumer fraud. All of

Barbano's claims against the Browns rely on an "alter ego" theory of liability.

**¶6** The Browns moved for summary judgment as to all claims against them. Noting that a "piercing the corporate veil" claim requires proof both that the corporation is "the alter ego of one or a few individuals" and that "observance of the corporate form would sanction a fraud or promote injustice," the Browns argued that Barbano had not presented "any evidence" to establish "either" of those elements. The court granted the motion, finding that Barbano failed to satisfy either prong of Arizona's "alter ego" test.

**¶7** Barbano then moved for reconsideration. After further briefing, the court determined that Barbano had presented facts establishing that "a genuine issue of material fact exists" about "whether there was sufficient commingling" of corporate and personal funds to establish that Classic and the Browns had an "alter ego" relationship. The court reaffirmed its prior determination, however, that Barbano failed to satisfy the second prong of Arizona's "alter ego" test because he did not present evidence to show that "disregarding [Classic's] corporate form is necessary to prevent injustice or fraud." The court therefore denied Barbano's motion for reconsideration. Barbano timely appealed. We have jurisdiction under A.R.S. § 12-2101.

## DISCUSSION

**¶8** Summary judgment is proper when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). "We review de novo a grant of summary judgment, viewing the facts and reasonable inferences in the light most favorable to the non-prevailing party." *BMO Harris Bank, N.A. v. Wildwood Creek Ranch, LLC*, 236 Ariz. 363, 365, ¶ 7 (2015).

**¶9** Barbano argues that the court erred in granting summary judgment on his alter ego claims against the Browns, asserting that "observing [Classic's] corporate form here would result in confusion and injustice because . . . it would frustrate [his] 'efforts to protect his rights' . . . while allowing [the] Browns to 'evade liability.'"

**¶10** "The concept of a corporation as a separate entity is a legal fact, not a fiction," *Deutsche Credit Corp. v. Case Power & Equip. Co.*, 179 Ariz. 155, 160 (App. 1994), and "corporate status will not be lightly disregarded," *Chapman v. Field*, 124 Ariz. 100, 102 (1979). "A corporate entity will be disregarded, and the corporate veil pierced, only if there is sufficient

3

evidence that 1) the corporation is the alter ego or business conduit of a person, and 2) disregarding the corporation's separate legal status is necessary to prevent injustice or fraud." *Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 214, ¶ 30 (App. 2010) (cleaned up).

**¶11** "Alter ego" status exists "when there is such unity of interest and ownership that the separate personalities of the corporation and owners cease to exist." *Dietel v. Day*, 16 Ariz. App. 206, 208 (App. 1972). Factors indicating that a corporation and its owner have an "alter ego" relationship include the "commingling of personal and corporate funds" and the failure to maintain corporate records or observe other "formalities of separate corporate existence." *Deutsche Credit*, 179 Ariz. at 160-61. Here, the superior court determined that Barbano presented sufficient evidence to withstand summary judgment on this prong of the "alter ego" test, and that determination has not been appealed. We therefore need not consider it further.

**¶12** A plaintiff may establish the "injustice or fraud" prong of the "alter ego" test in a variety of ways, including by presenting evidence that the corporation was "formed for the purpose of perpetrating a fraud or other illegal act," *Butler v. Am. Asphalt & Contracting Co.*, 25 Ariz. App. 26, 30 (App. 1975), that the corporation was undercapitalized when formed, *Norris Chem. Co. v. Ingram*, 139 Ariz. 544, 547 (App. 1984), or that "observance of the corporate form would confuse the opposing parties and frustrate their efforts to protect their rights," *Keg Rests. Ariz., Inc. v. Jones*, 240 Ariz. 64, 75, ¶ 38 (App. 2016). The requisite injustice may be found, for example, if a corporation and its subsidiary operate under confusingly similar names, leading customers, vendors, and other third parties to "reasonably assume" that the two are "only one company." *Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 38 (1991).

**¶13** By itself, however, a corporation's inability to pay its debts is insufficient to establish the injustice or fraud necessary to justify piercing the corporate veil. *See Norris Chem.*, 139 Ariz. at 546-47 (noting that "[a] corporation that was adequately capitalized when formed but which subsequently suffers financial reverses is not undercapitalized" so as to "justif[y] . . . piercing the corporate veil") (citation omitted); *see also Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir. 2017) ("[M]ere difficulty in enforcing a judgment or collecting a debt does not satisfy the injustice standard for alter ego liability.") (cleaned up). After all, "avoid[ing] personal liability" is "a legitimate purpose of incorporation," *Dietel*, 16 Ariz. App. at 208, and imposing personal liability on a corporation's owners merely because the corporation cannot pay its debts "would often defeat

the purpose of incorporation and tend to destroy the corporate form as a method of doing business," *Emp.'s Liab. Assurance Corp. v. Lunt*, 82 Ariz. 320, 323 (1957).

¶14 Barbano argues that the court erred in granting summary judgment on his alter ego claims because, he contends, the only relief he could obtain against Classic is "a judgment against a defunct LLC with zero assets." "After being served with the lawsuit," Barbano explains, Classic "closed its doors and ceased operation." Because Classic "is no longer conducting business or otherwise operational," "allowing [the] Browns to evade liability by hiding behind their defunct LLC would result in injustice." To support his argument, Barbano cites Nickless's deposition testimony that he has "heard" that Classic is "not in business" and a printout of a Google search for Classic which contains the notation "permanently closed."

¶15 The Browns deny that Classic is defunct, citing the declaration of Classic representative Kelly Gantner stating that Classic remains "an active business" that has "simply moved its location." They also challenge the foundation for and admissibility of the evidence Barbano relies on to show that Classic has shut its doors. In reply, Barbano argues that the Browns waived their objections to the admissibility of Nickless's testimony and the Google printout by failing to object in the superior court.

¶16 Even accepting Barbano's contention that Classic is closed and judgment-proof, however, Classic's current insolvency is insufficient, as a matter of law, to establish the injustice necessary to pierce the corporate veil. *See Norris Chem.*, 139 Ariz. at 547-48; *see also Ferrarell v. Robinson*, 11 Ariz. App. 473, 476 (App. 1970) (holding that the fact "that plaintiffs did not receive the benefit of their bargain . . . alone does not constitute any evidence of fraudulent conduct and . . . is not sufficient to justify the disregarding of the corporate entity").

¶17 Barbano asserts that Walter Brown "us[ed] corporate funds to pay" his personal credit card debts, explaining that Classic's financial records "indicate[] that between June 2018 and July 2020, [Classic] paid almost $20,000 to two of Walter Brown's personal credit card accounts." The mere fact that a corporate principal receives money from the corporation, however, does not indicate wrongdoing. *See Ize Nantan Bogawa, Ltd. v. Scalia*, 118 Ariz. 439, 442 n.3, 444 (App. 1978) (reversing judgment imposing personal liability on corporate principal for insolvent corporation's debt and noting that, although principal received a $5,000

5

monthly salary from corporation, "[t]here was no testimony" that salary was "excessive").

¶18 Even assuming *arguendo* that Walter Brown was not entitled to the funds he received from Classic, evidence that a corporate principal used corporate assets for his own benefit does not, by itself, satisfy the "injustice or fraud" prong of Arizona's "alter ego" test. *See SPUS8 Dakota LP v. KNR Contractors LLC*, 641 F. Supp. 3d 682, 694 (D. Ariz. 2022) (noting that, under Arizona law, "evidence of intermingling alone is insufficient . . . to pierce the [corporate] veil"). Although evidence that a corporate principal drained the corporation's accounts after the corporation incurred a debt to the plaintiff may establish the injustice required to pierce the corporate veil, Barbano has neither alleged nor presented evidence to show that the funds Classic disbursed to its principal over a two-year period left Classic with insufficient operating capital to meet its obligations under the consignment agreement. *Cf. Ariz. Tile, L.L.C. v. Berger*, 223 Ariz. 491, 493, 496, ¶¶ 5, 24 (App. 2010) (affirming judgment holding home remodeling company's principals personally liable for debt to supplier because, after company "received payment from homeowners for materials," principals caused the company to "divert[]" those funds "to other uses" when the company "should have . . . [held] those funds in trust for [supplier's] benefit"). The mere fact that Walter Brown received money from the entity he owned does not establish that an injustice will result unless he is held personally responsible for the entity's debts. *Cf. Thornton v. Dutch Nats. Processing, LLC*, 629 F. Supp. 3d 777, 803-04 (M.D. Tenn. 2022) (piercing corporate veil to hold LLC manager personally liable for LLC's debt because manager caused LLC to enter purchase contract and then "render[ed] the LLC unable to pay" by "transferring the funds" earmarked for payment to his personal account).

¶19 Barbano asserts that, based on his review of Classic's "financial records," "[i]t is a certainty" that "once the dealership closed" Classic's "assets were moved or otherwise liquidated." Although a corporate principal's transfer of the corporation's assets to avoid the reach of its creditors may justify piercing the corporate veil, *Martin v. Freeman*, 272 P.3d 1182, 1186, ¶ 16 (Colo. App. 2012), Barbano cites no evidence in the record to support his allegation that Classic concealed assets to defeat his claims. He points to no bank records, for example, reflecting that Classic's bank account was emptied after Classic entered into the consignment agreement in June 2019 or after Barbano filed suit in February 2020. What Barbano labels "a certainty" is, in fact, simply an assumption he would have us make. As a matter of law, assumptions are insufficient to defeat summary judgment. *McCleary v. Tripodi*, 243 Ariz. 197, 201, ¶ 21 (App. 2017)

(holding that "unproven assertions of facts are insufficient" to defeat summary judgment); *Ochoa v. City of Mesa*, 26 F.4th 1050, 1058 n.1 (9th Cir. 2022) (noting that assumptions not supported by evidence cannot create genuine issue of material fact).

**¶20**        Evidence that, at the outset, the Browns established Classic on an unsound financial footing that left the entity unable to meet its anticipated obligations might establish the injustice needed to justify disregarding the corporate form. *See Norris Chem.*, 139 Ariz. at 547 (noting that "stockholders" should not "escape personal liability" if they form corporation without "capital reasonably adequate for its prospective liabilities") (citation omitted). Likewise, evidence that Classic lacked the intent or financial wherewithal to comply with its obligations under the consignment agreement *at the time it entered that agreement* might establish the requisite injustice. *See Dietel*, 16 Ariz. App. at 208 (observing that corporate statute "should be disregarded" if corporation made a "promise to do a future act with the present intent not to perform"). But Barbano does not argue that either of those circumstances is present here. Instead, he simply asserts that Classic paid its principal almost $20,000 over a two-year period both before and after entering the consignment agreement and that Classic is now closed and judgment-proof. Accepting these assertions as true, they are insufficient, as a matter of law, to justify holding the Browns liable on an "alter ego" theory of liability.

**¶21**        To be sure, "under some circumstances a corporate officer or director" may be directly liable for corporate torts in which "the officer or director personally participates." *Warne Invs., Ltd. v. Higgins*, 219 Ariz. 186, 197, ¶ 51 (App. 2008); *see also Jabczenski v. S. Pac. Mem'l Hosps., Inc.*, 119 Ariz. 15, 20 (App. 1978) (noting that "[c]orporate directors" may be "personally liable for conversion committed by the corporation" if they "participate" in the wrongdoing, "have knowledge amounting to acquiescence," or are "guilty of negligence in the management and supervision of the corporate affairs causing or contributing to the injury"). Because Barbano asserts no direct liability claims against the Browns, we need not address this alternative theory of liability. We hold that the superior court did not abuse its discretion in granting summary judgment in favor of the Browns on Barbano's alter ego claims.

## CONCLUSION

**¶22**        For the foregoing reasons, we affirm.

**¶23**        The Browns request an award of reasonable attorney fees and costs under A.R.S. §§ 12-341 and -341.01. In the exercise of our discretion, we deny their request for fees. As the successful parties on appeal, the Browns may recover costs upon compliance with ARCAP 21.